COLE, Judge.
The legal issue presented by this workers’ compensation suit is whether or not a partially disabled employee must accept available work which he is physically capable of performing in order to recover benefits for his disability.
On January 4, 1979, plaintiff injured his back while working as a trackmobile operator for defendant Union Tank Car Company. He was thereafter hospitalized and treated for his back injury. By November 26, 1980, plaintiff’s treating physician, Dr. Thomas B. Flynn, felt plaintiff was capable of resuming light-duty work. However, Dr. Flynn opined that plaintiff remained partially disabled, and that he was incapable of heavy work, lifting over 30 to 40 pounds, climbing to heights, working for prolonged periods with his arms outstretched over his head, or riding upon or operating heavy equipment.
Upon receipt of the medical information which indicated plaintiff could assume light-duty work, Union Tank Car’s insurer, Royal Globe Insurance Company, contacted Mr. Bill Finkler in Chicago, the manager of safety for Union Tank Car. Mr. Finkler administered a formal light-duty work program which Union Tank Car had initiated in 1979 to comply with the Equal Employment Opportunity Commission’s rules and the Rehabilitation Act of 1973. The light-duty program was also required under some of Union Tank Car’s labor contracts, including its contract with the Baton Rouge union. Mr. Finkler told the insurance company light-duty work would be made available to plaintiff. Finkler allegedly contacted Mr. Douglas Trollope, the plant manager at Union Tank Car in Baton Rouge, and requested Trollope to offer plaintiff a job as a janitor. Mr. Dan O’Donnell of Royal Globe then wrote plaintiff on April 21, 1981, requesting plaintiff to return to work on May 4, 1981. Plaintiff, who was 63 years old at the time and who had worked for Union Tank Car since 1945, refused this job offer and instead elected to retire. Plaintiff’s compensation benefits were thereafter terminated on May 14, 1981, at which time plaintiff had received 122 weeks of compensation benefits for a total of $17,202.00, plus $3,465.28 for medical expenses.
Plaintiff filed suit on June 4, 1981, alleging that defendants Union Tank Car and Royal Globe Insurance Company had wrongfully and arbitrarily terminated his compensation benefits. After trial on the merits, the trial court found plaintiff to be partially disabled and held that 328 weeks of compensation benefits at $149 per week were due. The trial court also held that any Social Security disability benefits and retirement benefits received by plaintiff could not be credited against the amount of compensation due. The court refused to award plaintiff penalties and attorney fees, however. From this judgment, defendants have appealed.
*1221 Defendants’ only assignment of error is that the trial court erred in awarding additional compensation benefits when plaintiff refused available work which was within his physical ability to perform. Defendants argue plaintiff should not be entitled to additional disability benefits when he opted for retirement benefits instead of participating in the work program for disabled workers. Defendants cite the “odd-lot” doctrine enunciated in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980) and its progeny as inferring an obligation on the part of a partially disabled employee to accept employment which he is capable of performing. This argument is without merit. While the “odd-lot” doctrine does indeed measure an employee’s disability in terms of loss of earning capacity and the availability of the type of work the employee is capable of performing, the “odd-lot” test is used only to determine whether not an employee is permanently and totally disabled. However, in determining whether an employee is entitled to compensation as a partially disabled worker, the “odd-lot” doctrine is inapplicable; reference must instead be made to La.R.S. 23:1221(3). This statute reads as follows:
“Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * * # * sfc
(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976; and not beyond a maximum of four hundred twenty-five weeks for such partial disability resulting from injury occurring on and after September 1, 1976, and on or before August 31,1977, and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee’s actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3).”
Under this statute, if an injured worker cannot return to his former employment because of his injury, but can perform gainful work in another position, he is partially disabled. Conlay v. Houston General Ins. Co., 370 So.2d 196 (La.App. 3d Cir.1979), writ granted, 371 So.2d 618 (La.1979); LeBlanc v. Commercial Union Assur. Co., 349 So.2d 1283 (La.App. 1st Cir.1977), writ denied, 351 So.2d 174 (La.1977). Here the record clearly supports the trial court’s determination that plaintiff was partially disabled.
As a partially disabled worker, plaintiff was entitled to compensation benefits in the amount of 662/3rds percent of the difference between his former wages and any lesser wages he “actually earns” during *1222 the period of disability, but not to exceed a maximum of 450 weeks. This compensation is owed even if the employee refuses available work. In Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982), the Supreme Court held “[ojffers of other employment are irrelevant in cases of partial disability. Only actual employment and earned wages are relevant and then only as a credit against the compensation otherwise due.”[1] 411 So.2d at 1047. Similarly, in Scott v. Sears, Roebuck & Co., 406 So.2d 701 (La.App. 2d Cir.1981) and Mayes v. Louisiana-Pacific Corp., 379 So.2d 46 (La.App. 3d Cir.1980), writ denied, 381 So.2d 1232 (La.1980), partially disabled employees were still awarded compensation after they allegedly refused available work within their ability to perform. In both of these cases, the courts rejected the argument that “actually earns” should be read as “actually earns or is capable of earning.” Both courts concluded the statute is clear and must be applied as written by the legislature.[2] This problem was recognized in LeBlanc, when this court noted:
“That there might be inherent inequity in the present definition of partial disability and the benefits provided therefor, is a matter which addresses itself to the legislature. Our function is to interpret the statute as written. We find that the statute as amended intends that a partially disabled employee shall be paid compensation for such period of disability during which he earns no wages in any gainful occupation.” 349 So.2d at 1289.
Following this line of jurisprudence, we hold plaintiff is not barred from recovery of compensation benefits as a partially disabled employee because of his failure to accept light-duty employment. Nor should his compensation benefits be reduced by his retirement benefits, which are not wages “actually earned” after the accident, but are in the nature of deferred compensation for past services rendered.
For the above reasons, the trial court judgment is affirmed. Appellants are to pay all costs.
AFFIRMED.

. But see the concurring opinions of Justice Lemmon in Schouest and in Dodd v. Nicolon Corp., 422 So.2d 398 (La.1982). Justice Lem-mon would only allow benefits for partial disability for those weeks during which the employee does not earn wages because of the disability, either because the injury prevents his working in a particular week or because work is not available to a worker in that condition with his particular education and skills. Justice Lemmon has not been alone in his criticism of La.R.S. 23:1221(3) as it was amended in 1975. See Malone & Johnson, Workers’ Compensation § 275, 13 La.Civ.L. Treatise 615 (1980).

. Act 1 of the First Extraordinary Session of 1983 has since amended La.R.S. 23:1221(3). The category of partial disability has been replaced by language concerning Supplemental Earnings Benefits (SEB). An employee is entitled to SEB only if his injury results in his “inability to earn” wages equal to ninety percent of his wages at the time of injury. If his present “ability to earn” is less than ninety percent of his wages at the time of injury, he is entitled to SEB equal to seventy-four percent of the difference between the ninety percent of the wages at the time of injury and the average monthly wages (4.3 times his average weekly wages) he earns or is able to earn in any month thereafter.