473 So.2d 328 (1985)
Walter James TUCKER
v.
ASSOCIATED GROCERS, INC., et al.
No. CA 84 0701.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
Rehearing Denied August 20, 1985.
*329 Alex W. Wall, Sr., Baton Rouge, for plaintiff-appellant Walter James Tucker.
Robert D. Hoover, Baton Rouge, for defendant-appellee Associated Grocers, Inc. and Hartford Acc. and Indem. Co.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
This is a worker's compensation suit. The plaintiff, Walter James Tucker, instituted proceedings by petition filed April 20, *330 1982. Tucker's employer, Associated Grocers, Inc., and Hartford Accident and Indemnity Company, Associated's worker's compensation insurer, were named defendants. The petition alleged Tucker suffered the onset of disabling back pain while engaged in the delivery and unloading of Associated's products. Further allegations stated the defendants acted arbitrarily and capriciously in failing to pay compensation after timely notice of this incident. An award for $183 per week during the period of Tucker's disability, medical and hospital expenses and reasonable attorney's fees and penalties were sought. The defendants answered and on September 28, 1983, trial was conducted. After taking the matter under advisement, the trial court rendered judgment in favor of defendants dismissing the claim at plaintiff's costs. The trial court found the plaintiff failed to prove his case by a preponderance of the evidence. From this judgment plaintiff appeals.

FACTS
In 1975, Tucker underwent a laminectomy for a ruptured lumbar disc. The rupture occurred while Tucker was engaged in picking up a heavy trash can, part of his duties as a grounds supervisor at Louisiana State University. After employment as a security guard, Tucker commenced working for Associated as a warehouseman on February 23, 1978. His employment application failed to mention his previous disc surgery. Several months later Tucker was assigned as truck driver. Because the duties of a truck driver required heavy lifting during the delivery of merchandise, a physical examination was performed upon Tucker. At the request of Associated, the examination was conducted by Dr. Lloyd Perez, who incidentally had served in the past as Tucker's family physician. It revealed to Associated Tucker had undergone prior disc surgery.
On February 1, 1979, Tucker, while at work loading a truck, slipped on some ice and suffered what Dr. F.A. DeJean described as a lumbar strain. Muscle relaxants were prescribed. No compensation was provided as Tucker missed only a few days work. Subsequently, on December 27, 1979, Tucker visited Dr. DeJean due to a back injury he suffered unloading meat and frozen foods from an Associated truck. Dr. DeJean's opinion at this time was Tucker probably had a recurrent disc problem. Again the pain resolved in a matter of days and no compensation was awarded as Tucker returned to work.
On January 25, 1982, Tucker, at his second delivery of the day, was unloading merchandise for about ten minutes when, according to his testimony, he suddenly experienced a sharp pain in his lower back. As he continued to unload the pain increased. About twenty minutes into the delivery the pain prevented him from continuing. Lindy Munson and Joe Cannon, employees of Villa Oaks, the second delivery, corroborate that twenty minutes into the unloading Tucker had to stop because of severe pain. Cannon and Munson stated, however, Tucker arrived at Villa Oaks in pain and had trouble even exiting the cab of his truck. Upon returning to Associated's warehouse Tucker reported to Mr. Sam Politz, general manager for Associated. Tucker indicated he was suffering severe back pain and was going to see a doctor. Politz testified he was told by Tucker the pain was a result of a prior back operation.
On January 25, 1982, Tucker went to see Dr. Thomas Plantz, a chiropractor. Tucker's chief complaint was lower back pain, radiating into the left hip and leg, with pronounced numbness in his left foot. X-rays revealed subluxations in the L-3, L-4 and L-5 area, with a severe disc narrowing space in the L-5, S-1 space caused by degenerative disc disease.[1] Dr. Plantz treated Tucker for five consecutive days. *331 Still in pain, Tucker visited a Dr. Diggs. Dr. Diggs provided Tucker with pain killers.
At this time Tucker attempted to return to work. After two days the presence of pain prevented him from working. On February 18, 1982, Tucker was examined by Dr. DeJean, Perez's associate, and on February 19 and 24, 1982 by Perez. Pain killers and muscle relaxants were prescribed and Dr. Perez referred Tucker to Dr. Fisher who had performed his laminectomy in 1975. However, Dr. Fisher refused to examine Tucker because worker's compensation would not pay his bill and Tucker could not afford a $75 fee.
On February 22, 1982, still in pain, Tucker sought further medical care at the Veteran's Administration outpatient clinic. At the clinic he was attended by Dr. Thomas Grayson, a general practitioner with forty years experience. Dr. Grayson upon examination diagnosed Tucker as suffering a conduction defect to his sciatic nerve due to a protruded or herniated lumbar disc. A general confirmation of this diagnosis was obtained from an orthopedist rendering a consultation. On or about November 4, 1982, after numerous visits and physical therapy, the pain resolved. However, Dr. Grayson prohibited Tucker from ever performing heavy lifting again due to his susceptibility to future prolapse caused by his degenerative disc condition and the effect heavy lifting would have upon such a condition.
On November 10, 1982, Tucker returned to work for Associated at light duty. He was paid as a warehouseman, ten to fifteen cents an hour less than the pay of a truck driver. His light duties included sweeping, picking up paper and loading milk cartons. Tucker continued at this job until June 7, 1983 when he went on strike with the United Food Workers, Local 210, AFL-CIO and has not since returned.

ACCIDENT
If an employee receives personal injury by accident arising out of and in the course of his employment, his employer is liable for compensation benefits and medical payments. La.R.S. 23:1031. The employee must establish the occurrence of an accident by a preponderance of the evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. An accident arises out of the employment when it results from some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. When the performance of the usual and customary duties of a workman causes or contributes to a physical breakdown, the statutory requirements for an "accidental" injury are present. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982). A worker's pre-existing condition does not bar his recovery under the Louisiana Workmen's Compensation statute. An employer takes the worker as he finds him. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker. It is immaterial that the diseased or weakened condition eventually might have produced disability outside the employment situation. Guillory v. United States Fidelity & Guaranty Insurance Company, 420 So.2d 119 (La.1982).
The trial court found Tucker failed to prove his case by a preponderance of the evidence. The court arrived at this conclusion even though Tucker testified the accident occurred at work.[2]
"It is true that `The reviewing court must give great weight to the factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferences of fact *332 should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable.' Cadiere v. West Gibson Products Company, 364 So.2d 998, 999 (La.1978) (Italics ours). However, the appellate court is not required by this principle to affirm the trier of fact's refusal to accept as credible uncontradicted testimony (Johnson, cited below), or greatly preponderant objectively-corroborated testimony (Arceneaux, cited below) where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973)." West v. Bayou Vista Manor, Inc., supra, at 1150.
The trial court did not give any reasons why it cast judgment against Tucker, nor any specific reasons why Tucker's testimony was rejected. Even those instances when the trial court notes certain reasons which give it concern as to the reliability of testimony given by a party are subject to review for sufficiency of the noted reasons. West v. Bayou Vista Manor, Inc., supra, at 1149.
The testimony of Tucker reveals he suffered a sharp pain in his low back while unloading frozen foods. Thereafter, the pain increased until he could no longer continue unloading. This testimony was corroborated by two employees of the store receiving the frozen foods. The employees testified they continued to unload when Tucker became physically unable. These facts constitute an "accident" as contemplated by the Louisiana Worker's Compensation law. See Robichaux v. Terrebonne Parish Sch. Bd., 426 So.2d 241 (La.App. 1st Cir.1983). Further, Dr. Grayson indicated the heavy lifting required by Tucker's job aggravated a pre-existing degenerative disc condition in Tucker's lumbar spine. Additionally, the series of incidents suffered by Tucker resulting in minor injuries indicate the risks of injury attributable to his employment activity. Thus, the performance by Tucker of the usual and customary duties of his job have been shown to have caused or contributed to his physical breakdown. Therefore, the statutory requirements for accidental injury are established.[3] Cf. Scanlan v. Bernard Lbr. Co., Inc., 365 So.2d 39 (La.App. 4th Cir.1978), (where the court held a worker had a whole series of "accidents" every time he picked up heavy timber for loading finally resulting in disabling back pain) with Cornelius v. Dow Chemical Corp., 431 So.2d 86 (La. App. 1st Cir.1983), (where the court refused to find an "accident" occurred because the worker was involved in light work which ordinarily will not contribute to neck injuries previously sustained in a marital dispute).

CAUSATION
Where there is proof of an accident and of the following disability without any intervening cause it is presumed the accident caused the disability. Guillory, supra at 123. Tucker was capable of performing all the required duties of a truck driver from the time he assumed the position until January 25, 1982. Several work-related injuries occurred, however, Tucker *333 returned to full duty shortly after each one. Further, Dr. Grayson testified, given Tucker's history, the accident caused his disability. Of the five doctors who examined Tucker, not one attributed a different cause for the disability. Since Associated has not rebutted the presumption of causation which exists we find the disability to be caused by the accident.

DISABILITY
La.R.S. 23:1221(3) as it appeared in 1975 La.Acts, No. 583 § 9, is applicable in the present instance. Pursuant thereto, a claimant who is able to engage in some employment, though not necessarily the type of employment he was engaged in at the time of the accident, is considered to be only partially disabled. Dr. Grayson prohibited Tucker from engaging in any gainful employment until November 10, 1982. At that time he allowed Tucker to return to work but performing only "light duty." Tucker was deemed unable to perform his former duties as a truck driver. Accordingly, Tucker is entitled to compensation benefits for a period of 450 weeks, commencing January 25, 1982.

CREDITS
Although Tucker was employed as a warehouseman from November 10, 1982 until June 7, 1983, Associated is not entitled to a credit therefor against the 450 week period allocated for partial disability. This is true even though, according to Tucker's testimony, he earned as much or more than he was earning while driving the truck. The proviso in La.R.S. 23:1221(3) which applies reads: "... and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3)...." (Emphasis supplied.) Nor is Associated entitled to a reduction of benefits for the period of time Tucker has been on strike. Such "strike pay" is a benefit derived from union membership, presumably made available by dues paid into the union, and does not constitute "actual earnings." See, Cotten v. Union Tank Car Co., 434 So.2d 1219, 1222 (La.App. 1st Cir.1983), writ denied, 440 So.2d 151 (La.1983). Therein we held retirement benefits afforded no credit against compensation benefits, reasoning they were not wages "actually earned." Within the context of determining what is actually earned, we can view strike pay no differently.
We are not unaware of the inequities which flowed from the 1975 amendment providing that for injury producing partial disability the employee shall receive "sixty-six and two-thirds per centum of the difference between the wages [he] was earning at the time of the injury and any lesser wages which [he] actually earns in any week thereafter...." (Emphasis supplied.) This method of calculation, together with the prohibition against credit where no compensation is paid because of the employee's "actual earnings," is a legislative mandate to award Tucker the full 450 weeks of compensation. We find no legal basis for crediting wages paid, offsetting strike pay, or for denying benefits because of Tucker's refusal to continue his employment in the warehouse. See, Justice Lemmon's concurring opinion in Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982). See also, Malone & Johnson, Workers' Compensation § 275, 13 La. Civ.L.Treatise 615 (1980).

MEDICAL BENEFITS
Associated is liable for all medical expenses incurred by Tucker as a result of his accident. However, the record in this regard is somewhat lacking in definitive proof. The largest item of expense is for treatment of Tucker at the Veteran's Administration outpatient clinic. Tucker assigned to the Administrator of Veterans Affairs his claim and the proceeds thereof in an amount equal to the total reasonable charge made for treatment. Associated objected to the reasonableness of the charges, contending they were excessive. We note *334 the VA charged an "All-Inclusive Rate" of $61.00 for each of 22 visits and $65.00 for each of three additional visits. No evidence was offered to explain what actual services were rendered or to show specific, itemized charges. The VA did not intervene in the suit nor did it have counsel present to assert its interest. Without more proof of the nature and extent of services rendered, we conclude the $1,537 charged should be reduced to $750 (25 visits @ $30). Other evidence in the record suggests a reasonable charge for such treatment to be $30 per visit.
As regards the services of Dr. Thomas Plantz, Tucker testified the total charges were $285. The only exhibit offered in evidence showed a charge of $207. Tucker testified he paid Dr. Plantz the sum of $217 and a collateral insurance source paid sixty and some odd dollars. The defendant offered an exhibit showing the collateral source paid $95.60 to Dr. Plantz. We conclude it is proper to allow only the proven $207 as a medical expense for which the employer is liable.
Lastly, there is proof in the record of $20 being charged by Dr. F.A. DeJean for services rendered to Tucker. The medical expenses, therefore, for which we hold Associated liable, total the sum of $977.

STATUTORY PENALTIES
Where there is a serious defense presented in good faith, the assessment of attorney's fees and statutory penalties is not appropriate. Robichaux, supra at 245. Associated was not arbitrary, capricious or without probable cause in failing to pay benefits and medical payments. La.R.S. 22:658.
When Tucker reported to Mr. Politz he was going to the doctor for his back pain, he indicated his pain derived from a prior operation. Although Mr. Politz was aware the pain arose on the job, Tucker did not relate the pain to a specific job incident. Mr. Politz was justified in believing this was a pre-existing problem, not one related to Tucker's employment. Further, although all examining doctors knew Tucker was engaged in heavy lifting as part of his work duties, Tucker did not relate the pain to a job related incident upon examination by Dr. Plantz, Dr. DeJean and Dr. Perez. It was not until one month after the accident that Tucker told Dr. Grayson of the job related nature of his injury. In fact, Tucker attributed the pain to an illness on a form maintained by Dr. Plantz. Additionally, Associated made a job available to Tucker upon his recovery and assisted him in maintaining collateral medical benefits. Therefore, because we believe Associated acted in good faith in litigating this claim no assessment of attorney's fees or penalties will be made. Bates v. International Paper Company, 424 So.2d 1134 (La.App. 1st Cir.1982).

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Judgment is now rendered in favor of plaintiff, Walter James Tucker, and against defendants, Associated Grocers, Inc. and Hartford Accident and Indemnity Company, decreeing plaintiff to be partially disabled and awarding him workers' compensation at the rate of $183.00[4] per week for a total of 450 weeks.[5] Judgment is further rendered in favor of plaintiff and against defendants condemning defendants to pay unto plaintiff the total sum of $977 representing the *335 various medical benefits. All sums awarded are to bear interest from their respective due dates, until paid. Costs of these proceedings are assessed against defendant.
REVERSED AND RENDERED.
CARTER, J., concurs.
NOTES
[1] A subluxation is a partial dislocation of a vertebrae. In June of 1975, Dr. DeJean had x-rayed Tucker's back. The x-ray revealed no subluxations and that Tucker's interspaces were well preserved.
[2] External trauma is not necessary in order for an event to be considered an accident under Louisiana jurisprudence. Guillory, supra at 122 n. 4. Therefore, even though the Villa Oaks employees could not see Tucker's sharp pain, it may constitute an accident. The occurrence of pain is subjective. Henson v. Handee Corp., 421 So.2d 1134 (La.App. 2d Cir.1982).
[3] The record is insufficient to support any other finding. An accident has been shown by direct evidence; the testimony of Tucker and the duties of his employment. This evidence is not contradicted by the Villa Oaks employees testifying Tucker arrived in pain. Such testimony only corroborates the extent of Tucker's disability. An injury such as Tucker's is compensable even where disability is not caused by a single or specific incident. Chism v. Kaiser Aluminum & Chemical Corp., 332 So.2d 784 (La.1976). That Tucker was in pain prior to the occurrence of a sharp pain only illustrates the deteriorating condition of his back. An accident need not produce instantaneous objective symptoms of injury. Brasseaux v. Argonaut Ins. Co., 432 So.2d 1153 (La.App.3d Cir.1983). The pain Tucker experienced on January 25, 1982 could have derived from his lifting on the previous workday and it would still be compensable. Further, such matters as Tucker checking the illness box on a form instead of the injury box or his failure to specifically state to his original doctors work caused his injury are insufficient to support the finding by the trial court. West v. Bayou Vista Manor, supra at 1149.
[4] Although there is no proof in the record establishing the rate of compensation, as controlled by La.R.S. 23:1202 and 1221(3), the parties have stipulated in this court the sum of $183.00 per week is correct.
[5] Plaintiff returned to work on November 10, 1982 and worked until the event of the strike, June 7, 1983, admittedly earning during that period as much or more than he earned prior to the "accident." Weekly compensation benefits are not, therefore, due for this interval. The 450 weeks for which compensation is due commences on the date of the "accident," January 25, 1982, terminates on the date of his return to work, November 11, 1982, then recommences on June 7, 1983 when he ceased working due to the strike.