[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *West Page 1126 
[1] Plaintiff, Harold Joseph DeGruy, appeals from a trial court decision in favor of the defendant, Pala, Inc. (Pala) and their insurer, Aetna Life and Casualty Company, dismissing the plaintiff's suit for worker's compensation benefits, penalties and attorney's fees at his costs. The plaintiff asserts that he became disabled by an on-the-job aggravation of a preexisting non-disabling injury. The trial court found that the plaintiff failed to meet his burden of proof in establishing that his injury was the result of an accident which occurred while he was employed by the defendant, Pala.
[2] Mr. DeGruy, a 54 year old male, alleges an on-the-job injury while working as a millwright at the Borden Chemical Plant located in Geismar, Louisiana on November 19, 1984. He had worked as a millwright at the Borden Plant approximately twelve (12) years prior to his leaving the job on December 14, 1984.
[3] Mr. DeGruy first complained of an on-the-job injury in October of 1981. At the time of his 1981 injury, Mr. DeGruy was employed by Terotechnology, a maintenance contractor at the Borden Chemical Plant.[1] The record reflects that he injured himself while pulling on a wrench at the jobsite. After his injury, Mr. DeGruy consulted several physicians, including an orthopedist. As a result, he was prescribed daily whirlpool therapy for a two-week period *West Page 1127 
and Motrin 600 which he took three times daily. Dissatisfied with the prospect of taking this amount of medication on a daily basis, Mr. DeGruy eventually began receiving treatments from Dr. Phillip Smith, a chiropractor. These treatments began on April 17, 1982, and continued on a regular basis throughout 1982, 1983, 1984 and 1985, all due to recurring pain in his lower back. The record shows that Dr. Smith treated the plaintiff 149 times for lower back pain from April of 1982 until November of 1984.
[4] The medical bills resulting from that injury including those of Dr. Smith, were paid by Terotechnology's compensation carrier until June of 1984.[2] Mr. DeGruy did not stop working after the 1981 injury, and drew no worker's compensation benefits as a result of that injury. However, he occasionally missed a day of work in order to consult a physician.
[5] During the month of April 1983, the maintenance contract at the Borden Chemical Plant was divided between Terotechnology and the defendant Pala. As a result of this change, Mr. DeGruy became an employee of Pala and was in fact a Pala employee at the time of the alleged accident/accidents which are the basis for this lawsuit. Mr. DeGruy asserts that on or about November 8, 1984, and again on November 19, 1984, he injured his back while lifting valve covers at the plant site. He further contends that these injuries to his back have left him temporarily totally disabled from practicing his normal trade as a millwright. Pala contends that the plaintiff's injury was merely a flare-up of his preexisting injury and that the evidence does not support a finding of disability.
[6] Mr. DeGruy testified that after his 1981 injury he remained on anti-inflammatory medication except for a two month period. He stated that between the medication and chiropractic treatments he was able to perform his normal work duties with little or no pain, until he reinjured his back in November of 1984. He stated that on or about November 8th and on the 19th he was performing valve changes on a compressor and while lifting the valves he experienced back pain on each occasion. After the November 8th incident, Mr. DeGruy noticed that the medication he was taking was no longer helping the pain. Later that month, on the 19th of November, he was performing a similar valve change and experienced intense pain in his back and on the right and left sides of his groin. Mr. DeGruy stated that up until the November 19th incident he only experienced pain in his back, groin and right leg, but after the November 19th incident he experienced pain on both sides of his body, his back pain had intensified and his medication was no longer alleviating the pain.
[7] John Edward Martin, a co-worker employed by Pala in 1984, testified that he recalled Mr. DeGruy suffering an injury in November of 1984 when the two of them were changing a valve cover. He stated that Mr. DeGruy hurt his back and that he could not straighten up for a while afterward.
[8] Immediately following the November 19th incident, Mr. DeGruy reported to the first aid station and requested muscle relaxants to help alleviate the pain. Twelve pabalate tablets were prescribed and a report of the injury was made stating that Mr. DeGruy "aggravated old injury to back by lifting valve covers." The injury was subsequently reported to Mr. DeGruy's foreman, Charlie Sanchez, and to his supervisor, Elroy Phillip Kraemer. Mr. DeGruy continued working in pain until December 14, 1984. On that date he arrived at work and told his foreman that he was in real bad pain and needed to see his chiropractor. He returned to work after his chiropractic treatment still experiencing severe pain. Later that day, while being examined by the company doctor,[3] he requested some other type of medication because his previous medication was no longer providing relief. Mr. DeGruy took the new medication *West Page 1128 
and after receiving no relief he left work and has been unable to return since.
[9] Elroy Phillip Kraemer testified in his deposition that he was notified of Mr. DeGruy's accident on November 19, 1984, and that he had reported it to Pala's maintenance manager, Mr. Harry Accardo. He also stated that prior to December of 1984 Mr. DeGruy had worked continuously since his 1981 injury with the exception of occasional time off for doctors' appointments and medical testing.
[10] After leaving Pala, Mr. DeGruy continued to have persistent back pain and was unable to get relief from his medication and chiropractic treatments. He was advised by his counsel to seek medical attention. Thereafter, he was examined by Dr. Ray Haddad, an orthopedic surgeon, on December 26, 1984. The history related to Dr. Haddad was that Mr. DeGruy had injured his back in October of 1981 and had been under continuous treatment since then. No mention was made, according to Dr. Haddad, of any other incident or accident. X-rays were taken of his pelvis and lumbosacral spine which revealed some old spurring anteriorally at the level of L-3 and L-4. Other than that, there were no particular findings except hamstring tightness on both sides at about 20 degrees. The doctor's impression was that Mr. DeGruy had sustained a lumbosacral sprain and that he did not think he had any significant nerve root irritation. The doctor prescribed Williams exercises for the lower back and abdomen and told him to continue his medication. He further stated that he would advise Mr. DeGruy to return to work and "avoid any heavy stuff."
[11] Mr. DeGruy was also examined on January 3, 1985 by Dr. Patricio H. Mujicia, a neurosurgeon, who also recorded a history of his back problems similar to that described by Dr. Haddad. Again, no mention was made of any specific incident or accident occurring in November of 1984. After a physical examination, the doctor's impression was that Mr. DeGruy had a chronic lumbosacral strain. In order to rule out the possibility of a herniated lumbar disc, the doctor ordered a CT Scan and electromyelograph. Although the CT Scan revealed a concentric bulging annulus at L-3, L-4 and L-5, with no apparent narrowing of either the central canal or nerve foramina, the doctor interpreted the examination as normal. The doctor stated that from a neurological standpoint he would not place any restrictions on Mr. DeGruy's work. He also recommended that Mr. DeGruy see an orthopedic surgeon since he could not find any neurological problems. When asked why he made that recommendation he stated: "I could not find any neurological problems and there aren't too many other things that can produce this kind of pain. I thought, as I mentioned that it was a chronic lumbosacral strain, which has to do more with muscles, ligaments and joints, and I thought he should be evaluated by a bone doctor."
[12] Further evaluation of Mr. DeGruy's problem was conducted by Dr. Richard E. Robichaux, Jr., an orthopedist, on March 13, 1985. The history related to Dr. Robichaux was similar to that given to Dr. Haddad. Dr. Robichaux was unable to recall whether Mr. DeGruy mentioned a specific reinjury in November of 1984. Although Dr. Robichaux took x-rays of Mr. DeGruy, he declined to perform a physical examination, but rather deferred to the findings of Dr. Mujicia and Dr. Haddad. He felt that he would not have anything to add to their previous examinations. He further stated that Mr. DeGruy's complaints were legitimate and he recommended that if the pain persisted that he should first try a T.N.S. unit (a transcutaneous nerve stimulator) and then perhaps be referred to a pain clinic. He also suggested possible vocational rehabilitation training.
[13] Upon Dr. Robichaux's advice, Mr. DeGruy tried a T.N.S. unit for two months, which he described as an electronic shocking device. He stated that after a brief period of relief he was again unable to stop his back pain.
[14] Still in pain and without financial resources, Mr. DeGruy sought help from the VA hospital in September of 1985. He was seen by Dr. Roy Marrero, an orthopedic *West Page 1129 
surgeon, on September 18, 1985. The patient history related to Dr. Marrero included both the 1981 injury and the November 1984 reinjury. Mr. DeGruy was wearing a brace at the time of the exam and was complaining of severe back pain. The physical examination showed tenderness in the lower lumbar spine area. X-rays were also taken and with the exception of a loss of normal lordotic curvature, the doctor interpreted them as normal. The doctor prescribed Ampicillin 500 and Darvocet N100 and did not think that Mr. DeGruy was capable of working. Mr. DeGruy was seen again on October 2, 1985, and on November 13, 1985, and on both occasions he related continued back pain with radiation into the legs and stated the medication had not helped at all. The examinations revealed tenderness in the lower lumbar spine area. Dr. Marrero prescribed Tylenol number 3 and concluded that Mr. DeGruy was disabled from work. At this point Mr. DeGruy was referred to the VA Hospital in New Orleans for testing.
[15] Mr. DeGruy was admitted to the VA Hospital on November 18, 1985 and underwent a myelogram, CT Scan, bone scan and x-rays. Dr. Marrero considered the myelogram and CT Scan normal except for some mild degenerative changes and an abnormal straightening of the lumbar spine. The bone scan showed no evidence of metastatic bone disease. Dr. Marrero concluded that the straightening of Mr. DeGruy's lumbar lordosis is an objective finding which would explain his chronic back pain. The doctor considered Mr. DeGruy to be disabled from further employment as a millwright and prescribed Darvocet N100 for Mr. DeGruy's pain. He also advised Mr. DeGruy not to do any heavy lifting, avoid prolonged stooping or bending, avoid repeated bending, and try to avoid prolonged standing.
[16] As stated above, Mr. DeGruy had been receiving chiropractic treatments from Dr. Smith since April of 1982. Dr. Smith explained that he treated Mr. DeGruy for an on-the-job injury since 1982 which he diag nosed to be a sprain and a strain injury to the lumbosacral spine and also to the groin area. He also took x-rays which indicated a chronic lumbosacral instability which he diagnosed as a facet syndrome.[4] Dr. Smith concluded that Mr. DeGruy had an instability of the lumbosacral joint with a laxity of the retaining ligaments which allows the vertebra to slip posterially or backward, compressing the nerve roots between the vertebra and the facet joints.
[17] The schedule of visits to Dr. Smith reveals that the plaintiff underwent treatments three times a week for eleven weeks when he initially injured his back. After that time, the plaintiff received treatments on an average of less than one visit a week up until May of 1984, when he reinjured his back. He received ten treatments during the month of May, 1984, and then resumed his weekly visits up until November 7, 1984, when he alleged a reinjury occurred. Dr. Smith's records indicate that Mr. DeGruy experienced as many as seven exacerbations of his injury between April of 1982 and November of 1984. He stated that with this type of injury it was not uncommon to experience exacerbations, especially with the type of work Mr. DeGruy did. Furthermore, we note that on only two occasions since his original injury did Dr. Smith treat Mr. DeGruy more frequently than once a week. The first occasion was in May of 1984, and the second in November of 1984, both during his employment with Pala.
[18] Dr. Smith saw Mr. DeGruy on November 7, 1984, and reported that Mr. DeGruy had picked up a heavy cover of some type and experienced lower back pain radiating into his right hip and leg. On November 8th, Mr. DeGruy showed no improvement in symptoms. Dr. Smith noted new findings after the November 7th injury which were not present previously, specifically the facet appeared to be somewhat higher up or jammed a little higher into the nerve canal. Dr. Smith considered the incident of November 7th as a reinjury of Mr. DeGruy's *West Page 1130 
preexisting condition. He stated that the condition which Mr. DeGruy has is an unstable facet joint which is susceptible to aggravation and reinjury, particularly with lifting. He further explained that there is laxity or weakness of the capsule ligaments which hold the facets in place and keep them positioned properly, and that the weakened condition of the facets made them susceptible to reinjury when they were overstressed.
[19] On November 19, 1984 Dr. Smith reported that Mr. DeGruy had experienced severe back pain while lifting a valve cover at work. Thereafter, Dr. Smith saw Mr. DeGruy on November 21, 23, 26, 28, 29 and December 3, 5, 10, 12, 14, 16, 20, 21 and 28. On November 29th Dr. Smith advised him to begin wearing a lumbosacral support while at work, and on December 20th he advised him to quit working.
[20] Since then Mr. DeGruy has continued with his chiropractic treatments and medication, but is unable to reach the level of relief which he experienced prior to the reinjury in November of 1984.
[21] The requirements for a successful claim under the Louisiana Worker's Compensation statute, specifically LSA-R.S. 23:1031, are a personal injury which is the result of an accident, which accident in turn arises out of and in the course of employment. LSA-R.S. 23:1021, et seq. Guillory v. U.S. Fidelity Guar.Ins. Co., 420 So.2d 119 (La. 1982).
 An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. An accident arises out of the employment when it results from some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. When the performance of the usual and customary duties of a work man causes or contributes to a physical breakdown, the statutory requirements for an "accidental" injury are present. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La. 1982).
[22] Tucker v. Associated Grocers, Inc., 473 So.2d 328, 331 (La.App. 1st Cir. 1985), writ denied, 477 So.2d 716 (La. 1985).
[23] In a worker's compensation suit the employee bears the burden of proving the work-accident causing the injury, by a preponderance of the evidence.[5] West v. Bayou VistaManor, Inc., 371 So.2d 1146 (La. 1979). First he must prove that an accident as defined by LSA-R.S. 23:1021 occurred and secondly, that the accident caused the disability complained of. LSA-R.S. 23:1031. An accident is defined in LSA-R.S. 23:1021 as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury." LSA-R.S. 23:1021(1). However, the term "accident" must be interpreted liberally in favor of the injured employee. LSA-R.S. 23:1317; Cornelius v. Dow ChemicalCorp., 431 So.2d 86 (La.App. 1st Cir. 1983); Lucido v.Aetna Life Casualty Co., 411 So.2d 608 (La.App. 1st Cir. 1982).
[24] The Louisiana Worker's Compensation Act does not require that the employment cause the disability. Rather, the chain of causation required by the statutory scheme as adopted by the Legislature in LSA-R.S. 23:1031 is that the employment causes the accident, the accident causes injury, and the injury causes disability. Guillory, supra, at 122.
[25] Furthermore, an "accident" need not be unexpected or unforeseen, since employees whose injuries are quite predictable due to preexisting conditions are protected as completely as normal workers by the Louisiana Worker's Compensation Act. *West Page 1131 
Moreover, an injury need not be immediately revealed by objective symptoms at the time of the injury though they are clearly covered by the act. Wheat v. Ford, Bacon Davis ConstructionCorporation, 424 So.2d 293 (La.App. 1st Cir. 1982),writs denied, 429 So.2d 155, 158 (La. 1983). See alsoBayou Vista, supra; Clakeley v. Ochsner FoundationHosp., 478 So.2d 1335 (La.App. 5th Cir. 1985), andTucker, supra.
[26] It is well settled that in evaluating the evidence in a worker's compensation suit, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. Holiday v. Borden Chemical, 508 So.2d 1381
(La. 1987); Bayou Vista, supra.
[27] The trial court found that Mr. DeGruy failed to prove that an accident as defined by LSA-R.S. 23:1021(1) occurred in November of 1984. In arriving at this conclusion the trial court placed much emphasis on the fact that Mr. DeGruy did not relate the specific events of November 8th and 19th to Dr. Haddad, Dr. Mujicia and possibly not to Dr. Robichaux. Further, the court noted that the initial report of Dr. Smith, dated January 7, 1985, made no mention of the work-accidents in November 1984[6]
and that Mr. DeGruy's wife and son testified that Mr. DeGruy injured himself in 1981 and has gotten worse since that time. The court made no mention of the testimony of Mr. DeGruy's co-worker, John Edward Martin. Although the court concluded that an "accident" did not occur in November of 1984, it went on to state that the injury suffered in 1981 has been most likely shown to be the cause of the plaintiff's problems.
 It is true that `The reviewing court must give great weight to the factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable.' Cadiere v. West Gibson Products Company, 364 So.2d 998, 999 (La. 1978) (Italics ours). However, the appellate court is not required by this principle to affirm the trier of fact's refusal to accept as credible uncontradicted testimony (Johnson, cited below), or greatly preponderant objectively-corroborated testimony (Arceneaux, cited below) where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La. 1973).
[28] Bayou Vista, Supra, at 1150. See also Mart v.Hill, 505 So.2d 1120 (La. 1987).
[29] We are compelled to reverse the trial court's finding that the work-accident was not proven by a preponderance of the evidence. We find that applicable legal principles were overlooked by the trial court in reaching this determination and the record reflects no sound reason for rejecting the plaintiff's corroborated testimony.
[30] Based on the testimony of Mr. DeGruy, his co-worker, John Edward Martin, his supervisor, Elroy Phillip Kraemer and Pala's report of plant injury dated November 19, 1984, we can reach no other conclusion but that Mr. DeGruy suffered an "accident" as defined by LSA-R.S. 23:1021(1), in November of 1984 while employed by the defendant Mr. DeGruy's failure to specifically mention the November incidents to Drs. Haddad and Mujicio, whom he only saw on one occasion, does not constitute a contradiction of the plaintiff's corroborated testimony. See Tucker,supra, at 332, f. 3. We further conclude that the accident was the result of some risk to which Mr. DeGruy was subjected in the course of his employment and to which he would not have been subjected had he not *West Page 1132 
been so employed. Furthermore, the risk involved in lifting valve covers is a risk which is greater than that occasioned by a person not engaged in such employment.
[31] We now address the second requirement in establishing a worker's compensation claim, that being, proof of a causal relationship between the "accident" and the resulting disability. The Supreme Court enunciated the following legal principles relating to the Louisiana scheme of worker's compensation.
 1) Clearly a worker's pre-existing condition does not bar his recovery under the Louisiana Worker's Compensation statute. An employer takes the worker as he finds him. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker. Furthermore it is immaterial that the diseased or weakened condition eventually might have produced death or disability outside the employment situation.
 * * * * * *
 2) The accident need not either cause or aggravate the disease which is the cause of the disability, nor adversely change a particular organ or organs of the body. In Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 at 827 (1969), this Court expressly rejected the proposition that "an accident must either cause or aggravate the disease which is the cause of the disability,". . . .
 * * * * * *
 3) Where there is proof of an accident and of the following disability without any intervening cause it is presumed that the accident caused the disability. It is not necessary to determine the exact cause of the disability. The criterion for causal connection between the accident and the disability is: "has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?"
 4) The presumption referred to in number three above is rebuttable. Its effect is to shift the burden of proof to the defendant. The defendant bears the burden of coming forward with enough contrary evidence to rebut the presumption.
 5) The ultimate determination concerning disability under the worker's compensation statute is by the courts, not the medical experts. The courts apply legislative definitions to the medical science in order to achieve an equitable and just result. "Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all credible evidence."
[32] Guillory, supra, at 123. (Citations omitted).
[33] Applying the above legal principles to the facts in the present case, we find that prior to the accident on November 19, 1984, Mr. DeGruy was capable of performing all the required duties of a millwright even though he suffered from lower back pain. On November 19, 1984, Mr. DeGruy suffered a work-accident contributed in part by his preexisting back problem. Following this accident he was disabled from performing work as a millwright. We presume his disability was caused by the accident/accidents,[7] and we find that the defendant did not rebut that presumption.
[34] We are therefore convinced that although Mr. DeGruy had a preexisting back condition, the accidents in November of 1984 worsened his condition and made it disabling and compensable under the worker's compensation laws. While the accidents of November 1984 may not have caused Mr. DeGruy's initial back problems, they did substantially change the symptomatology and worsened his condition. Following the November 1984 accidents he was disabled from performing any gainful *West Page 1133 
occupation by virtue of the fact that he was constantly in pain.
[35] We are further convinced that the November 1984 accidents were not the sole cause of Mr. DeGruy's disability, but rather contributing causes to his original injury which occurred in 1981 while he was employed by Terotechnology.
[36] When a combination of work-related accidents causes a disability, or where by virtue of a second accident a prior injury is aggravated causing disability, both the subsequent employer and the employer at the time of the first work-related accident are solidarily liable for compensation benefits and medical expenses. Daigle v. Lajet, Inc., 504 So.2d 1126
(La.App. 5th Cir. 1987); Gales v. Gold Bond Bldg.Products, 493 So.2d 611 (La. 1986); Wheat, supra,
"The employee may, at his option, obtain an award for the entire disability against any one or more of successive employers whose employment contributed to the disability." Gales, supra,
at 614.
[37] Mr. DeGruy elected not to file a claim against Terotechnology and therefore we are without authority to render any judgment against it. We therefore hold Pala liable for any and all compensation and medical benefits which Mr. DeGruy may be due. Of course Pala is entitled to contribution from Terotechnology and may pursue its claim in the trial court by way of its severed third party demand as mentioned in footnote 1 supra.
[38] The court must now determine the extent of Mr. DeGruy's disability and thus the amount of worker's compensation benefits to which he is entitled. Mr. DeGruy contends that he is entitled to benefits for temporary total disability due to constant pain which prevents him from engaging in any gainful occupation. The defendant contends that the evidence presented at trial fails to establish any disability.
[39] As stated above, the finding of disability within the framework of the worker's compensation law is a legal rather than purely a medical determination. It is the totality of the evidence, both medical and lay testimony, which must be examined by the trial court in making its determination on the question of disability and it is the function of the court to assess the weight to be accorded such testimony. The opinion of a physician or other medical expert does not necessarily determine a legal disability and the court may accept or reject the opinion expressed by a medical expert depending upon what impression the qualifications, credibility and testimony of that expert makes upon the court. However, as a general rule, the testimony of a treating physician should be given more weight than that of a physician who examined a claimant for diagnostic purposes. The positive findings of medical expert are to be afforded greater weight than the negative findings as to the existence or not of a particular condition. Green v. Jackson Rapid DeliveryService, 506 So.2d 1345 (La.App. 2d Cir. 1987).
[40] In order to recover temporary total disability benefits an injured employee must prove by a preponderance of the evidence that he is unable to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience. LSA-R.S. 23:1221(1).
[41] Recent judicial interpretations of LSA-R.S. 23:1221(1) have recognized the viability of the odd lot doctrine and the working in pain doctrine, in temporary total disability cases.[8]Green, supra; Johnson v. Monroe Pulpwood Co., Inc.,505 So.2d 862 (La.App. 2d Cir. 1987); Thomas v. Elder Pallet andLumber Sales, Inc., 493 So.2d 1267 (La.App. 3d Cir. 1986),writ denied, 497 So.2d 312 (La. 1986).
[42] A claimant is considered temporarily totally disabled under the "odd lot" doctrine when he can perform no services *West Page 1134 
other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist.Green, supra. This determination can only be made after evaluating the claimant's physical and mental capacity, education and training. Johnson, supra.
 An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence.
[43] Lattin v. HICA Corporation, 395 So.2d 690, 693 (La. 1981).
[44] Furthermore, a worker who cannot return to any gainful employment without suffering substantial pain falls within the odd lot doctrine when his pain renders him unable to perform any service for which a reasonably dependable market exists. Culpv. Belden Corp., 432 So.2d 847 (La. 1983). To qualify as substantial, the pain accompanying routine tasks or attempts to return to work must be serious, intense or severe. Rodney v.Crown-Zellerbach Corp., 470 So.2d 538 (La.App. 1st Cir. 1985). The reasons for classifying substantial pain cases within the framework of the odd lot doctrine were explained aptly inWilson v. Ebasco Services, Inc., 393 So.2d 1248 (La. 1981) as follows:
 [A]n employee who experiences substantial pain when performing routine physical tasks may find that employment opportunities are severely limited. Normally, an employer would find it less desirable to hire someone who must endure serious pain while working than someone who does not; the fact of pain may restrict the scope of activities in which an employee can be engaged, and may result in the functional inability to perform certain duties. Moreover, recurrent pain may cause frequent absenteeism on the part of the disabled worker, either because of the inability to work when the pain is particularly intense or because of the necessity of seeking medical treatment. These factors, along with others, place the employee who must work in pain at a competitive disadvantage to healthy workers in finding employment. See Malone Johnson, Workers' Compensation 2d 1980), § 277 at 628-29. There is also a possibility that the injured employee may be more susceptible to a second injury, or that the prior injury may be aggravated in the course of employment, making the employer liable for the resulting disability. Depending upon the circumstances of the case, a worker who seeks employment despite the presence of severe and continuing pain may find that employment opportunities are gravely limited. In such a case, the injured worker is entitled to an award for total disability.
[45] Id. at 1252.
[46] The record reveals that the plaintiff was 49 years old at the time of the accident and holds a graduate degree in agriculture. His work history includes working at a hatchery for two years, managing a poultry farm on a sharecropper basis for four years, and since then he has continually worked as a millwright (approximately 20 years). Ordinarily, a plaintiff with Mr. DeGruy's educational background and mental ability would not qualify as an odd lot worker. However, the plaintiff testified that since the accident in November of 1984 he has suffered almost constant pain and is unable to obtain any lasting relief either through medication or chiropractic treatments.
[47] When questioned concerning any attempts to find more suitable employment, Mr. DeGruy stated he attended a school put on by the Federal Government to assist workers who needed rehabilitation. Mr. DeGruy was advised at the school to seek a supervisory position. When asked whether *West Page 1135 
he followed through on that advice he stated:
 No sir I didn't feel and still don't — I have trouble when I sit too long . . . If I sit too long or stand too long, my back and legs go to bothering me. Normally, when I'm at home, when I sit for, say, an hour or so, I get up and walk around for a while and then I'll be all right and I can sit down again.
 I've had problems trying to figure out what I could go into because of this, plus the fact that I can't drive very far. It happens when I drive mostly — it'll happen other times, too — but my right foot will go to burning me. There's nothing I can do to stop it, you know. I tried all kinds of medications and nothing will give me relief.
[48] When asked whether he had received any social security benefits, Mr. DeGruy answered no and explained as follows:
 Well, you're automatically, I believe turned down the first few times . . . The problem I seem to be having is that the doctors will tell me something, you know, like a tore muscle that hadn't healed, indicating it may never heal, to learn to live with it. I can live with it, if you can call it living — my lifestyle has changed quite a bit but I can't figure out how to work with it.
[49] Mr. DeGruy's testimony is corroborated by his wife, son and neighbor who all testified to the fact that after the accidents in November of 1984 Mr. DeGruy was unable to perform even the simplest tasks around his home.[9]
[50] We conclude that Mr. DeGruy established a prima facie case that he is temporarily totally disabled. The evidence shows that because of his constant back pain and his age he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist.
[51] The evidence introduced by the defendant fails to rebut a finding that Mr. DeGruy is temporarily and totally disabled to engage in any occupation for wages.
[52] The defendants offered only the testimony of the physicians to rebut the plaintiff's evidence showing a temporary total disability. Although the physicians were unable to pinpoint a definitive cause of Mr. DeGruy's pain, they all agreed that he had suffered either a lumbosacral strain or strain or both. Furthermore, they all interpreted Mr. DeGruy's pain as genuine, as evidenced by the pain medication prescribed.
[53] We find this evidence insufficient to rebut the plaintiff's showing of temporary total disability and therefore hold that he is entitled to an award of temporary total disability benefits until his disability ceases. This award is subject to the rights of any of the parties to seek a modification of this judgment pursuant to LSA-R.S. 23:1331 should Mr. DeGruy's condition change.
[54] The award of compensation benefits should begin when the pain resulting from an accident becomes disabling. Melder v.Century Telephone Enterprises, 413 So.2d 1325 (La.App. 3d Cir. 1982). However, the rate of compensation is based upon when the injuries occurred, LSA-R.S. 23:1202. Wheat, supra. We find that Mr. DeGruy suffered from substantial pain on the date he ceased working, December 14, 1984, and thus became temporarily totally disabled under the odd lot doctrine on that date and is entitled to benefits calculated on that basis. Furthermore, Pala is liable *West Page 1136 
for all medical expenses incurred by Mr. DeGruy as a result of his accidents in November, 1984. The record also indicates that Mr. DeGruy will have a continuing need for more medical services to treat his injury, and he may recover those expenses as they are incurred. LSA-R.S. 23:1203; Lesterv. Southern Casualty Ins. Co., 466 So.2d 25 (La. 1985).
[55] The final issue to be decided is whether Pala acted arbitrarily and capriciously in refusing compensation payments and medical expenses to the plaintiff under LSA-R.S. 23:1201.2. Considering the serious legal question of causation between employment and accident, and considering the facts of the case, and the varying results in the trial court and this Court, we do not find that the defendant was arbitrary and capricious in their refusal to pay either compensation or medical benefits.
[56] For the reasons assigned, the judgment of the trial court is reversed. Judgment is rendered in favor of the plaintiff, Harold Joseph DeGruy, and against Pala, Inc. and Aetna Life and Casualty Company awarding plaintiff temporary total disability benefits commencing December 14, 1984, for as long as the plaintiff's disability continues. Judgment is further rendered in favor of plaintiff condemning defendants to pay all medical expenses incurred as a result of this injury. All awards are to bear interest from their respective due dates, until paid. The judgment of the trial court is affirmed with regard to the award of penalties and attorney's fees. Costs of these proceedings, including expert witness fees, are assessed against defendants.
[57] REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
[1] Prior to trial Pala filed a third party demand against Terotechnology alleging that Terotechnology was responsible for any compensation benefits or medical expenses which might be due Mr. DeGruy. In the alternative Pala sought contribution from Terotechnology for one-half of any sums which it might be condemned to pay on the original demand. On motion of third party defendant the trial court severed the third party claim from the original claim filed by Mr. DeGruy.
[2] The record indicates that Terotechnology's compensation carrier filed bankruptcy and was unable to pay any further medical bills.
[3] The examination by the company doctor was a required yearly physical.
[4] Dr. Smith explained that a facet syndrome occurs when the joint of the vertebra below rides too high on the joint of the vertebra above and encroaches into the opening where the nerve lies.
[5] Prior to the 1983 amendments to the worker's compensation law, proof by a preponderance was the standard required to establish the work-accident as well as the resulting disability. However, the new amendments require clear and convincing evidence to prove a permanent total disability or to prove entitlement to supplemental earnings benefits when the employee alleges inability to earn wages due to pain. LSA-R.S. 23:1221(2) and LSA-R.S. 23:1221(3). Talley v. Enserch Corp., 508 So.2d 197
(La.App. 3d Cir. 1987), writs denied 513 So.2d 289, 290 (La. 1987).
[6] A careful reading of Dr. Smith's report dated January 7, 1985, reveals that although a specific accident was not mentioned, he did report that Mr. DeGruy presented himself on November 8, 1984, experiencing lower back pain into the right medial thigh and knee. Dr. Smith's second report, dated March 5, 1985, focused on the November treatments specifically.
[7] It has also been held that an accident which aggravates or accelerates a preexisting condition is compensable even where disability is not caused by a single or specific Incident. SeeChism v. Kaiser Aluminum Chemical Corporation,332 So.2d 784 (La. 1976); Melder, supra, Lemoine v. MarksvilleIndustries, Inc., 391 So.2d 528 (La.App. 3d Cir. 1980),writ denied, 396 So.2d 1325 (La. 1981); Scanlan v.Bernard Lumber Co., Inc., 365 So.2d 39 (La.App. 4th Cir. 1978).
[8] Under the 1983 amendments to the worker's compensation law, the odd lot doctrine and the working in pain doctrine are no longer available to an injured employee seeking permanent total disability benefits. Johnson, supra: Thomas, supra.
[9] Mr. DeGruy's neighbor, Sam H. Frederic, stated that prior to the accidents Mr. DeGruy was a hard working man who performed a great deal of work at home. After the accident he stated that Mr. DeGruy was and is unable to do anything. Mrs. DeGruy stated that Mr. DeGruy's back trouble became a real problem, to where he couldn't do anything, at the end of 1984, but that he had problems on and off before that. She also stated that the most physical work he does now is ride a lawn mower for two hours a day at scattered intervals. He will ride for a while and then lie on a heating pad until the pain subsides and then go back and ride until he needs to rest again, Darrell DeGruy, plaintiffs seventeen-year-old son, testified that prior to November of 1984 his father performed a great deal of work around the house and that since his father left Pala he and his brother had to start doing most of the work. He further stated that the most that his father does now is cut grass and that he has trouble doing that.