526 So.2d 284 (1988)
James BREAUX, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 87-309.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1988.
*285 Sandoz, Sandoz & Schiff, Leslie J. Schiff, Opelousas, for plaintiff-appellee.
Brinkhaus, Dauzat, Peter Caviness, Opelousas, for defendant-appellant.
Before DOMENGEAUX and GUIDRY, JJ., and REGGIE,[*] J. Pro Tem.
GUIDRY, Judge.
This is a worker's compensation suit filed by plaintiff-appellee, James L. Breaux, against Travelers Insurance Company (hereinafter Travelers), the worker's compensation insurer of his employer, Schlumberger Well Services, Inc. (hereinafter Schlumberger). Plaintiff prayed that he be found totally and permanently disabled; his benefits be reinstated; and, defendant be assessed penalties and attorney's fees. Following a trial on the merits, the trial court found plaintiff temporarily and totally disabled and defendant, Travelers, arbitrary, capricious and without just cause in terminating plaintiff's benefits. Accordingly, there was judgment ordering defendant to reinstate Breaux's weekly compensation of $230.00 per week from January 19, 1986 and continuing for the duration of his disability. Further, Travelers was cast for statutory penalties of 12% on all past due amounts, as well as attorney's fees in the amount of $6,500.00.
From that judgment, Travelers timely perfected a suspensive appeal urging the following errors:
1. The trial court erred in holding that Breaux was temporarily and totally disabled.
2. The trial court erred in failing to find plaintiff entitled only to Supplemental Earnings Benefits and in refusing to recognize Travelers' right to terminate weekly compensation benefits (SEB) based upon La.R.S. 23:1221(3)(d)(iii).
3. The trial court erred in awarding statutory penalties and attorney's fees.
4. Alternatively, the trial court erred in awarding the sum of $6,500.00 in attorney's fees. *286 Plaintiff neither appealed nor answered Travelers' appeal.

FACTS
The accident, which is the basis of this suit, is not disputed. On July 23, 1983, while preparing to run a formation test on a well being drilled by Grey Wolf, Breaux fell through a hole in the catwalk on which he was working, injuring both of his knees.
Breaux had previously injured his right knee while working for Schlumberger in 1972. As a result of the 1972 accident, Breaux suffered a traumatic tear of the medial meniscus, was off work four or five weeks, underwent an arthrotomy by Dr. F. Lionel Mayer and then returned to work with a five percent permanent physical impairment of the right lower extremity. Also, in April of 1982, Breaux sustained an injury to his left knee. He was not operated on but was treated conservatively and returned to work after a few weeks. As a result of the 1982 accident, Breaux had a small tear of the medial meniscus of the left knee. However, Breaux elected not to have surgery and continued to work despite continuing problems with his left knee.
When Breaux fell through the catwalk in July 1983, he reinjured the cartilage in his left knee. This was confirmed by an an arthrogram performed on plaintiff by a radiologist on August 17, 1983. The arthrogram showed evidence of a tear of the medial meniscus involving both the anterior and posterior horns. On August 23, 1983, Dr. Mayer performed an arthroscopic examination followed by an arthrotomy, a menisectomy and removal of some chondrocytes or cartilage spurs on the knee cap. Post-operatively, Dr. Mayer observed and treated plaintiff regularly through March 1984 and periodically thereafter.
The accident of July 1983 and surgery of August 1983 left plaintiff with a 15% permanent physical impairment of his entire lower left extremity. In Dr. Mayer's opinion, Breaux would never be able to return to work for Schlumberger in his prior capacity as he was no longer able to engage in prolonged walking, standing or squatting, bending, stooping, walking on uneven ground, or carrying loads greater than 25 pounds. However, the doctor opined that plaintiff could engage in some form of light duty or sedentary employment.
For six months after the accident, Breaux received full salary, and he received half-salary thereafter until December 31, 1984. He was paid weekly compensation benefits during this time, and Schlumberger supplemented the compensation benefits to bring him up to full or half salary. On December 31, 1984, Breaux retired from Schlumberger in order to take advantage of a retirement plan with Schlumberger which paid benefits over 10 years. The option to be paid all benefits owed under the retirement plan over a ten year period was to terminate on January 1, 1985.
At trial, and for sometime prior thereto, Breaux was receiving retirement benefits of $1,287.00 per month, less tax, which had commenced on January 1, 1985, and social security disability benefits of $718.00 per month. The retirement benefits received from Schlumberger were not disability retirement benefits, but regular retirement benefits due under a plan fully funded by his employer.
Travelers had paid the plaintiff weekly compensation benefits through January 19, 1986 in the amount of $230.00 per week, for a total of 130 weeks of compensation benefits. On January 19, 1986, Travelers terminated the benefits, claiming Breaux was entitled only to Supplemental Earnings Benefits (SEB) and, since he had retired, he was entitled only to 104 weeks of SEB pursuant to La.R.S. 23:1221(3)(d)(iii). Travelers continues to pay all medical expenses. At the time of his retirement from Schlumberger, Breaux was 57 years old.

EXTENT OF THE PLAINTIFF'S DISABILITY
The principal issue on appeal concerns the extent of Breaux's disability under the Louisiana Worker's Compensation Act as amended by Act 1 of the 1st Ex. Sess. of 1983. The record makes clear that Breaux is disabled and physically unable to return *287 to the type of work he performed for Schlumberger prior to the accident of July 23, 1983. Finally, the record establishes that the disability Breaux suffered at time of trial is permanent.
The first logical question concerns whether Breaux is totally disabled, permanently or temporarily, within the meaning of La.R.S. 23:1221(1) and (2).
Breaux's treating physician, Dr. Mayer, whose opinion was relied upon by both plaintiff and defendant, did not find that plaintiff's physical condition prevents him from engaging in any self-employment or gainful occupation for wages. Rather, Dr. Mayer merely placed restrictions on the types of activities in which plaintiff could engage and the duration of time, without rest, that plaintiff could engage in some other activities. Dr. Mayer opined that Breaux could engage in sedentary work or light duty manual labor.
Thomas M. LaFosse, an expert in rehabilitation and vocational placement who testified on behalf of Travelers, stated that, based upon his review of Dr. Mayer's deposition and Breaux's experience and education, there were several types of jobs available in a "reasonable geographic region" which Breaux could perform.
In finding Breaux's disability to be temporary-total, the trial court reasoned as follows:
"... There is no showing in this record that anyone offered the plaintiff any of the employments that Mr. LaFosse talked about.... The inquiry then at that point is whether it was proven that the described employments were available to the plaintiff in the specified area. The Court finds that this was not proven. The reason I find that it was not proven is because it was not proven that this man could do what was alleged to have been available. Let's see what Mr. LaFossee says. Mr. LaFosse says that he's found these jobs about making crab traps and what have you, peeling crawfish, okay. Under cross examination, Mr. LaFosse admitted that there were certain tests that were available to him through his own firm which would have been valuable in making those determiantions, but he didn't use them. Consequently, I am going to reject Mr. LaFosse's testimony as being based on insufficient data. I reject the testimony of any expert if he doesn't have all the tools to work with and I find that he didn't have them in this case. Consequently, I reject it. Consequently, the plaintiff then is not forced into proving by clear and convincing evidence that solely as a consequence of substantial pain he cannot perform the work that he was offered, tendered or otherwise proven available to him. Accordingly, I find that the plaintiff has established by a preponderance of the evidence and because of his injury he is temporarily and totally disabled in engaging in any self-employment or gainful occupation for wages."
In rejecting LaFosse's testimony, the trial judge found that Travelers had not established the availability, in Breaux's community or reasonable geographic area, of jobs which Breaux could perform. On that basis, he found plaintiff to be temporarily totally disabled. Presumably, in finding Breaux to be temporarily totally disabled, the trial court relied on the "odd-lot" doctrine which we have found applicable in cases involving temporary total disability. Thomas v. Elder Pallett and Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir., 1986), writ denied, 497 So.2d 312 (La. 1986).
For the following reasons, we find that the trial court clearly erred when it found plaintiff's disability to be temporary-total.
In the landmark case of Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980), the Louisiana Supreme Court enunciated this state's understanding of the "odd-lot" doctrine stating:
"... Although any one sentence description of the doctrine necessarily tends to oversimplify it, some treatise writers have provided helpful starting points for understanding it as applied by the courts. Professor Johnson observes:
`Simply stated, this doctrine is that a claimant may be considered totally disabled *288 if, after his injury, he is considered an "odd-lot" in the competitive labor market, i.e., that he may be capable of holding various jobs from time to time, but that the kind of work he may perform is so limited in quality, dependability or quantity that a reasonably stable market for that work does not exist.' Johnson supra, 39 La.L.Rev. at 889.

. . . . .
In order to determine whether the plaintiff fits within this category of odd-lot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he `cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity.' Reese v. Preston Marketing Assoc., 274 Minn. 150, 142 N.W.2d 721, 723 (1966). If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with `a gainful occupation.' It is fairer to place the burden on the defendant to show that there are steady jobs available to the plaintiff, after plaintiff has shown his odd-lot status, than to require the plaintiff to prove the universal negative of not being employable at any occupation. Brown v. Safeway Stores [82 N.M. 424], 483 P.2d 305, 308 (N.M.App.1971); Lyons v. Industrial Special Indem. Fund, 98 Idaho 403, 565 P.2d 1360, 1363 (1977); Larson, supra, § 57.61 at pp. XX-XXX-XXX. This apportionment of the burden of proof is equitable in our jurisdiction for the additional reason that the Louisiana statutory scheme does not include any effort to rehabilitate the injured worker...." (Emphasis ours).
First, we note that the injured worker bears the burden of establishing that he should be considered an "odd-lot" employee. Further, we observe that under the worker's compensation act prior to amendment, upon establishing his "odd-lot" status, the worker was considered totally and permanently disabled. Additionally, we note that one reason given for establishing an "odd-lot" category for injured workers was the absence in the Louisiana worker's compensation statute of any provision for the rehabilitation of an injured employee.
Under the 1983 amendments to the worker's compensation statute, permanent total disability connotes the inability of an employee to engage in any employment, be it self-employment, odd-lot employment, sheltered employment, employment while working in pain or any other occupation for wages. When questioned about Breaux's ability to engage in some type of employment, his treating physician, Dr. F.L. Mayer, stated:
"Q. ... [D]octor, do you think that Mr. Breaux is capable of engaging in other sorts of employment, light duty employment?
A. Yes.
Q. Do you think he could, for instance, do a job that's in an office or something like that?
A. Yes.
Q. Do you think he could do medium duty work?
A. What do you mean?
Q. Well, let's say work where he's required to stand for maybe an hour or two at a time and sit alternately, and no prolonged or repeated bending, stooping or squatting.
A. I think he could probably perform these activities. He would be more or less doing these types of activities at home.

*289 Q. Let me ask you this. Do you think that he would be capable of operating a job in which he has to drive an automobile?
A. Depending upon the distance. You know, I surely feel that at the present time, his knees are functionally capable of driving an automobile, but whether he could do it for several hours a day, that remains questionable."
Clearly, by the testimony of his own physician, Breaux is not totally disabled.
When questioned regarding his patient's prognosis, Dr. Mayer opined:
"Q. Dr. Mayer, as I understand, it is your testimony that Mr. Breaux's condition with regard to both knees is permanent. Is that correct?
A. Yes.
Q. In other words, there's no chance of improvement on the impairment and disability that he has on either knee?
A. I don't think there's going to be an improvement or a decrease in the impairment or the disability in either of the knees.

. . . . .
Q. In other words, it's fair to say that what Mr. Breaux has now, he's going to have for the rest of his life as far as impairment. Is that right?
A. Yes."
Undoubtedly, Breaux's disability is permanent.
Recently, in Anderson v. Aetna Casualty and Surety Company, 505 So.2d 199 (La.App. 3rd Cir.1987), writ denied, 511 So. 2d 1152 (La.1987), this court had occasion to decide a case strikingly similar in fact to this one. The plaintiff in Anderson was an unskilled laborer possessing a tenth grade education. Anderson suffered successive knee injuries (the first in November 1982 and the second in February 1984) which left him with a 35% impairment of his left leg. Anderson's physician placed almost identical restrictions on his patient's activities as those placed by Dr. Mayer on the activities of Breaux. In both suits, plaintiffs alleged that they were permanently and totally disabled, both alleged they were due penalties and attorney's fees, and in both cases the trial judge found plaintiffs temporarily and totally disabled.
In Anderson, supra, we reversed the trial court's finding of temporary-total disability, stating:
"It is clear from the evidence before us that the plaintiff is no longer able to engage in employment requiring heavy manual labor.... However, the plaintiff has failed to prove that he cannot engage in any self-employment or gainful occupation for wages, except for the fact that he lacks certain skills or training. We do not believe that plaintiff is entitled to a determination of temporary total disability simply because of a lack of training or education to perform some other job. In that respect, we disagree with the trial court and find that its determination of temporary total disability was clearly wrong."
The court went on to note that, while the odd lot doctrine is available to a temporarily and totally disabled employee (see Thomas v. Elder Pallett and Lumber Sales, Inc., supra, where the court afforded odd-lot classification to a worker which the court found "was in a recovery period" and who would "most likely recover within a forseeable period of time"), it does not apply in cases where the employee's condition is permanent not temporary.
In the present case, plaintiff has failed to prove that his permanent disability is total such that he cannot engage in any self-employment or gainful occupation for wages; likewise, he has failed to show that he is in a recovery period of some definable duration after which he would physically be able to return to his former employment. Further, the disability rating (15% of the left lower extremity) does not qualify Breaux for permanent partial benefits under La.R.S. 23:1221(4). Accordingly, plaintiff is not entitled to benefits for permanent-total or temporary-total disability. However, considering the extent of plaintiff's disability; his unquestioned inability to return to his former employment; and, the fact that since his injury plaintiff has not engaged in any employment or self-employment, *290 we conclude that he is entitled to SEB pursuant to the provisions of La.R.S. 23:1221(3). Further, we will reserve to the parties all rights to which either may be entitled under the provisions of La.R.S. 23:1226.

SUPPLEMENTAL EARNINGS BENEFITS
Appellant does not seriously question plaintiff's entitlement to SEB but urges that Travelers has paid to the plaintiff all of the benefits to which he is entitled under the provisions of La.R.S. 23:1221(3). In this regard, Travelers urges that, considering plaintiff's retirement and acceptance of benefits under the Schlumberger retirement plan, he is only entitled to 104 weeks of SEB which have been paid.
La.R.S. 23:1221(3)(d) provides that supplemental earnings benefits shall terminate after a maximum of 520 weeks or after a minimum of 104 weeks if the employee "retires or begins to receive old age insurance benefits under Title II of the Social Security Act, which ever comes first; ...". While the reference to Title II of the Social Security Act is specific, we find the phrase "when the employee retires" ambiguous. The legislative intention in the employment of this term is not clear or precise. Ordinarily, a person is considered "retired" when he has permanently withdrawn from business or the work force. In today's society it is not unusual for an individual to take early retirement from one employment and thereafter engage in a completely different type of employment. A typical example being the retired teacher or ex-member of the military who takes early retirement and begins a second career. Further, La.R.S. 23:1226 recognizes an injured employee's right to rehabilitation so that he can be trained at the employer's expense to engage in a second career.
Presumably, Travelers contends that, because plaintiff elected to receive payments under the Schlumberger retirement plan, he is "retired" within the meaning of La. R.S. 23:1221(3)(d)(iii). We think not. There is no evidence that plaintiff is receiving or entitled to receive old age insurance benefits. There is no evidence in the record which supports the conclusion that plaintiff has permanently withdrawn from the work force other than the facts that he has retired from Schlumberger and is receiving a pension from that employer and is also receiving Social Security disability benefits. His receipt of the latter does not deprive him of SEB under Section 1221(3). The record establishes that, although plaintiff suffers partial disability of his lower extremities, he is capable of engaging in a gainful occupation for wages. Plaintiff earned the benefits due him under the Schlumberger retirement plan by his continuous employment with that firm over a period in excess of thirty years. His election to take the benefits to which he is entitled under this plan by reason of his long and faithful service to his employer should not deprive him of any other benefits which his employer is obligated to provide under the worker's compensation law unless it is established that plaintiff has actually retired, i.e., withdrawn from the work force with no intention of returning. We cannot conceive that the legislative intention was otherwise.
It is well settled that the worker's compensation act is remedial in nature and that, in order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee. Green v. Heard Motor Company, 224 La. 1077, 71 So.2d 849 (1954); Compton v. North River Insurance Company, 281 So. 2d 848 (La.App. 1st Cir.1973), writ denied, 284 So.2d 336 (La.1973); Huett v. Insurance Company of North America, 329 So.2d 222 (La.App. 4th Cir.1976), writ denied, 332 So.2d 863 (La.1976). Considering the generous and nonrestrictive interpretation of the statute as mandated by our jurisprudence, we conclude that the term "retires" as used in Section 1221(3)(d)(iii) connotes a total and permanent withdrawal from the work force. Further, we conclude that plaintiff's receipt of social security disability benefits and his acceptance of benefits under the Schlumberger retirement plan does not give rise to a conclusive presumption that plaintiff is "retired" within the meaning of the act. Therefore, in as *291 much as there is no evidence of plaintiff's intention to permanently withdraw from the work force, we conclude that the provisions of Section 1221(3)(d)(iii) are inapplicable. Accordingly, plaintiff is entitled to supplemental earnings benefits for a period not to exceed 520 weeks or until such time as he has permanently withdrawn from the work force or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first.

STATUTORY PENALTIES
The trial court awarded plaintiff 12% statutory penalties on each monthly compensation benefit payment which it found was due to plaintiff and unpaid. Appellant contends that this was erroneous.
The award of statutory penalties in worker's compensation cases is governed by La.R.S. 23:1201(B, E), which provides in pertinent part as follows:
"B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer has knowledge of the injury or death and resulting loss of income, on which date all such compensation then due shall be paid.

. . . . .
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. ..." (Emphasis ours).
In Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3rd Cir.1985), this court was called upon, for the first time, to determine the meaning of "reasonably controverted". In Chelette, at pages 366 and 367, this writer, as organ of the court, stated:
"Black's Law Dictionary 298 (5th ed. 1979) defines `controvert' as `to dispute; to deny; to oppose or contest; to take issue on.' Using this definition along with a plain reading of the statute, we conclude that the following test is applicable: given the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case."
The evidence in the record shows that Travelers never refused to pay plaintiff any submitted medicals. When it learned of plaintiff's retirement from Schlumberger in January of 1986, it was only good business practice for it to check its file on Breaux. That check revealed that Travelers had paid plaintiff approximately 130 weeks of benefits. Considering the closeness of the issues presented in this case, we find that Travelers had a reasonable basis for controverting plaintiff's demand for further compensation. Accordingly, we will reverse that portion of the trial court's judgment awarding penalties in favor of plaintiff.

ATTORNEY'S FEES
Defendant-appellant also argues that the trial court erred in awarding plaintiff $6,500.00 in attorney's fees. In Chelette, supra, at 367 and 368, this court observed:
"The 1983 revision of R.S. 23:1201.2 provides in pertinent part:
"Any insurer liable for claims arising under this Chapter, ..., shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make *292 such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, ... The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter."
This revision, unlike the statutory penalties section, retained the same standard as the repealed statute for the imposition of attorney's fees. Attorney's fees are imposed if the insurer is found to be arbitrary, capricious, or without probable cause in its failure to pay a claim within 60 days after receipt of written notice of same."
It is well settled that a worker's compensation carrier should not be penalized for seeking judicial resolution of close issues. Trudell v. State, Office of Risk Management, 465 So.2d 184 (La.App. 3rd Cir.1985); Mallet v. Louisiana Nursing Homes, Inc., 459 So.2d 178 (La.App. 3rd Cir.1984), writs denied, 463 So.2d 604 and 605 (La.1985). Travelers' actions in this case were not arbitrary and capricious. Therefore, the trial court erred in awarding attorney's fees.
Accordingly, for the reasons stated, the judgment of the trial court is reversed and set aside and we render judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, James L. Breaux, and against the defendant, Travelers Insurance Company, for Supplemental Earnings Benefits, pursuant to the provisions of La.R.S. 23:1221(3), commencing January 19, 1986. All SEB payments past due on the date this judgment becomes final are to be paid in a lump sum, together with legal interest on all past due payments from due date of each installment until paid. Appellant, Travelers, is cast with all costs of this appeal.
REVERSED AND RENDERED.
NOTES
[*] Judge Edmund M. Reggie, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.