570 So.2d 139 (1990)
Martin GUILLORY Plaintiff-Appellee,
v.
SOLOCO, INC. Defendant-Appellant.
No. 89-492.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
Rehearing Denied December 14, 1990.
*140 Burson & Ortego, I. Jack Burson, Jr., Eunice, for plaintiff-appellee.
Preis & Kraft, Charles A. Mouton, Lafayette, for defendant-appellant.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
DOMENGEAUX, Chief Judge.
Defendant, Soloco, Inc., appeals a judgment ordering it to pay temporary total disability benefits, penalties and attorney's fees to its former employee, Martin Guillory. We affirm.[1]
*141 Prior to trial on the merits, the parties stipulated the following: Guillory injured his right knee in a work related accident on November 16, 1983; at the time of the accident, Guillory's average weekly wage was $155.00; Guillory received $103.32 every two weeks in compensation benefits from the date of the accident through May 26, 1988, when his benefits were reduced to $8.14 every two weeks.
The issues before us are whether plaintiff has reached maximum medical improvement, whether plaintiff is an "odd lot" worker, and whether Soloco, Inc., was properly charged with penalties and attorney's fees.

MEDICAL HISTORY
On November 16, 1983, Guillory twisted his right knee while working as a swamper for Soloco, Inc. After receiving immediate treatment from Dr. F.J. DeRouen and Dr. Luke Bordelon, he was referred to Dr. David Drez of Lake Charles, an orthopedist specializing in disorders of the knee.
At his first examination, Dr. Drez observed damage to the anterior cruciate ligament of the right knee, as well as symptoms consistent with a tear of the medial meniscus cartilage. On August 7, 1984, Dr. Drez surgically repaired the cruciate ligament and removed a portion of the meniscus which was in fact torn. He further observed "moderately severe" arthritic degenerative changes, which he attributed to the accident.
Although plaintiff underwent several months of physical therapy, he did not regain adequate range of motion in his right knee. This prompted Dr. Drez to perform a second surgical procedure on January 15, 1985, a closed manipulation of the knee to break up its scar tissue.
Dr. Drez continued to treat plaintiff through 1985 and 1986. He characterized plaintiff's progress as "good, but not excellent." Although plaintiff was gaining motion and strength, his complaints of pain continued. According to Dr. Drez, plaintiff's subjective complaints were entirely consistent with the pathology in his knee and with other objective criteria.
In December of 1986, plaintiff returned to Dr. Drez, complaining that his knee "gave way." Finding no significant changes in the knee, Dr. Drez concluded plaintiff bruised or sprained his knee. He gave plaintiff instructions to return in one year. Apparently, this report was the latest medical information in defendant's file before plaintiff's benefits were reduced in May of 1988.
Plaintiff was examined by Dr. Rodney Landreneau on October 28, 1988. X-rays taken at this examination revealed a loose, triangular shaped bone fragment which, in Dr. Landreneau's opinion, contributed to plaintiff's pain and to crepitation in plaintiffs knee. He recommended Dr. Drez reevaluate plaintiffs condition for the possibility of performing an arthroscopy to remove the bone fragment. Dr. Landreneau forwarded his report to the adjuster handling plaintiff's claim, but the adjuster did not forward it to Dr. Drez.
Dr. Drez conducted his final examination of plaintiff in December of 1988. At this time, plaintiff was complaining of pain, swelling, grinding, loss of motion and popping. Although Dr. Drez detected no signs of instability, he observed plaintiff walked with a limp, lacked 5 degrees full extension and could squat only 90 degrees. He also observed muscle atrophy and crepitus in the kneecap area.
Dr. Drez assigned plaintiff a 40 to 50 percent disability of the lower right extremity based upon the reconstruction of the cruciate ligament, the loss of the medial meniscus, arthritic changes, loss of motion and plaintiff's subjective complaints. He believed plaintiff was capable of performing only sedentary work, finding plaintiff was 100 percent disabled from jobs that involved climbing, walking long distances, squatting, kneeling or running. Without *142 the benefit of Dr. Landreneau's report, he concluded plaintiff had reached maximum medical improvement.

DISABILITY
The trial judge awarded Guillory temporary total benefits, finding the plaintiff fell within the odd lot exception to the compensation statute, as amended in 1983. Defendant argues Guillory is not temporarily and totally disabled because (a) he has reached maximum medical improvement and (b) he can do sedentary work.
On the date of plaintiff's accident, November 16, 1983, La.R.S. 23:1221(1) read as follows:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
The jurisprudence has held the 1983 amendments to La.R.S. 23:1221 failed to exclude from temporary total disability the application of the odd lot doctrine. This circuit and several others have specifically found that the odd lot doctrine is a viable consideration in determining whether a claimant is temporarily and totally disabled. Thomas v. Elder Pallet and Lumber Sales, Inc., 493 So.2d 1267 (La.App.3d Cir.1986), writ denied, 497 So.2d 312 (La. 1986); DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1st Cir.1988), writ denied, 530 So.2d 568 (La.1988); Frazier v. Conagra, Inc., 552 So.2d 536 (La.App.2d Cir. 1989), writ denied, 559 So.2d 124 (La.1990).
However, the odd lot doctrine does not apply in cases where the employee's condition is permanent rather than temporary. Breaux v. Travelers Insurance Co., 526 So.2d 284 (La.App.3d Cir.1988); La.R.S. 23:1221(2)(b). Unlike Breaux, where we concluded the plaintiff was permanently disabled, the trial court found, and we agree, that Guillory had not reached maximum medical improvement at the date of trial.
The issue of disability is determined by the totality of the evidence, including both lay and medical testimony. On appellate review, the trial court's findings of work connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable. Charles v. Aetna Casualty & Surety Co., 525 So.2d 1272 (La.App.3d Cir.1988), writ denied, 531 So.2d 480 (La.1988).
After reviewing the record, we find the trial court was not manifestly erroneous in concluding Guillory was only temporarily disabled at the time of trial. His conclusion is supported by Dr. Landreneau's report indicating a loose bone fragment may be present in the plaintiff's knee and recommending further evaluation of this condition. Dr. Landreneau stated the bone fragment may be contributing to plaintiff's pain and crepitation in the knee, two observations noted by Dr. Drez at the plaintiff's last visit. This condition should have been specifically investigated, particularly where Dr. Drez noted in his final report that plaintiff had gotten worse, not better. Although Dr. Drez stated plaintiff had reached his maximum medical improvement, he arrived at this conclusion without the benefit of Dr. Landreneau's report. We cannot say the trial judge erred, given the totality of the evidence in the record.
A claimant is considered temporarily and totally disabled under the odd lot doctrine when he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not *143 exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training, age or other factors combined to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence. Degruy, Frazier, Thomas, supra.
Guillory was 31 years old at the time of trial. Although he graduated from high school, his I.Q. score places him within a low to normal range of intelligence. In addition to his job as a swamper with defendant, he also worked as a stock clerk at Winn-Dixie and a counter clerk at Mr. Cook. His employer provided sixteen months of vocational rehabilitation in electronics repair, but this was not enough time for Guillory to complete the course. He resides in Eunice, Louisiana.
Ms. Debra Graul, accepted by the court as a vocational rehabilitation expert, testified on behalf of Guillory. Ms. Graul has a master of science in vocational rehabilitation and has worked as a rehabilitation counselor for the Department of Health and Human Resources and for the Orleans Parish Sheriff's Department. She has been in private practice for eight years and accepts referrals from both plaintiff and defense counsel.
Ms. Graul performed a job market survey for St. Landry Parish for October through December of 1988. She testified the unemployment rate in the parish was 17 percent. Relying on the restrictions imposed by Dr. Drez, she considered the plaintiff capable of performing only sedentary work. She testified the sedentary jobs in the Eunice area were confined to clerical positions and sewing at a local factory. Guillory does not have secretarial skills, and to Ms. Graul's knowledge, the factory has never hired a male in its sewing department. She also noted the sedentary jobs in the Eunice area were generally held by more qualified workers who were unable to get better jobs because of the decline in the region's oil based economy. In her opinion, these people have pushed unskilled workers such as Guillory out of the local sedentary market.
Ms. Andora Vasser testified on behalf of defendant. Ms. Vasser is a former elementary school teacher who has been employed for the past eight years as an occupational consultant. Her educational background did not include any courses in vocational rehabilitation or economics. The trial court did not accept her as an expert, but it did permit her to testify as a lay witness.
Ms. Vasser testified she also conducted a labor market survey and found no job openings for someone with plaintiff's physical restrictrions. She contacted two sewing factories, but they had no immediate openings. She did locate open delivery positions at local newspaper offices and pizza restaurants.
Considering all the evidence, particularly the relative qualifications of the lay and expert witnesses, we find that plaintiff established a prima facie case under the odd lot doctrine. Defendant failed to rebut plaintiff's case by showing that regular, continuous employment is available within a reasonable proximity to plaintiff's residence. The delivery jobs identified by Ms. Vasser are not sedentary positions but are considered light duty work. As we understand the restrictions imposed by Dr. Drez, plaintiff is disabled from light duty employment. The defendant's witness admitted she could find no sedentary openings within the Eunice or Lafayette regions. The trial judge did not err in holding plaintiff to be an odd lot worker and thus entitled to temporary total benefits under La.R.S. 23:1221(1).

PENALTIES AND ATTORNEY'S FEES
Defendant further contends the trial court erred in awarding plaintiff penalties and attorney's fees pursuant to La.R.S. 23:1201(E) and 23:1201.2.
*144 La.R.S. 23:1201(E) subjects the employer or insurer to a twelve percent penalty on any unpaid compensation installment unless the employer or insurer has "reasonably controverted" the employee's right to benefits. In Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App.3d Cir.1985), this court announced the following test in determining whether plaintiffs claim has been reasonably controverted:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant, (emphasis added).
Plaintiffs temporary total disability benefits were reduced to supplemental earnings benefits on May 26, 1988. Mr. David Sturgis, the adjuster handling this claim, testified the decision to reduce benefits was based upon plaintiffs failure to keep an appointment with Dr. Drez in August of 1987 and upon Dr. Drez's representations that plaintiff could perform certain jobs that were available in his community.
After reviewing the record, we find the explanations posited by the adjuster, in this case, do not reasonably controvert the plaintiffs claim. Mr. Sturgis admitted he did not inquire as to why plaintiff missed the August 1987 appointment, nor did he schedule another appointment before benefits were terminated some nine months later. The trial court found that plaintiff missed this appointment because he lacked transportation from his home in Eunice, Louisiana to Dr. Drez's office in Lake Charles. Additionally, in his deposition, Dr. Drez denied any recollection of having represented what jobs plaintiff could perform before his final report in December of 1988.
The most recent medical information available to defendant before plaintiff's benefits were terminated was contained in Dr. Drez's report of December 1986. That report noted no significant change in plaintiffs knee, other than a bruise or a sprain. We acknowledge that plaintiff had been receiving benefits for a long period of time, and defendant certainly had the right to reevaluate his claim. However, at the time benefits were reduced, defendant apparently had no information, medical or factual, which disputed plaintiffs entitlement to benefits. The trial court did not err in assessing penalties.
La.R.S. 23:1201.2 authorizes an award of attorney's fees when the employer or insurer's failure to pay a claim within sixty days of written notice is found to be "arbitrary, capricious, or without probable cause." Whether or not a termination or refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the insurer or employer at the time of its action. Hodges v. Sentry Insurance Company, 492 So.2d 193 (La.App.3d Cir.1986).
We have already discussed the information available to defendant at the time benefits were reduced. We note here that defendant did not become apprised of any unfavorable information until after benefits were reduced. This unfavorable information would include a statement by Dr. Landreneau that plaintiff told him (Dr. Landreneau) that he did not return to Dr. Drez because "he didn't feel as if he was recovering anymore and his recovery was at a stand still ..." and would include Dr. Drez's final report stating plaintiff reached maximum medical improvement. Perhaps defendant could have defeated plaintiffs claim for attorney's fees had it more diligently investigated plaintiff's condition before benefits were terminated. From the evidence in the record, we find no error. The trial court's award of $4,000.00 in attorney's fees, which we specifically find to be reasonable, is affirmed.
In his brief, plaintiff seeks an increase in attorney's fees for prosecution of this appeal. However, as plaintiff did not answer defendant's appeal, this issue is not properly before us. La.C.C.P. art. 2133.

*145 DECREE
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against defendant-appellant.
AFFIRMED.
ON MOTION TO AMEND JUDGMENT, OR IN THE ALTERNATIVE, AN APPLICATION FOR REHEARING FILED BY MARTIN GUILLORY
PER CURIAM.
Applicant has correctly called our attention to the fact that he filed an answer to the appeal but that said answer and attending notations were apparently inadvertently omitted from the record on appeal. These documents have been furnished us, and accordingly, we amend our judgment of November 7, 1990, to increase attorney's fees from the sum of $4,000.00 to the sum of $5,500.00.
The alternative motion for application for rehearing is denied.
NOTES
[1] In his petition, Guillory named as defendants Soloco, Inc. and "North American Underwriters Insurance Company whose name has been changed to Louisiana Underwriters Insurance Company." North American did not file an answer or otherwise appear in this litigation, and Soloco, Inc. defended the suit against all claims by plaintiff. Plaintiff subsequently dismissed North American Underwriters of Louisiana and Louisiana Underwriters Insurance Company.