LABORDE, Judge.
Plaintiff appeals the hearing officer’s finding her no longer entitled to compensation benefits. She claims that the hearing officer neglected to consider whether the odd-lot doctrine is applicable to her accident, which occurred in 1988. She is correct, and we reverse.
Facts
Claimant, born October 12, 1944, was injured in the course and scope of her employment as a boudin staffer when she slipped and fell October 10, 1988, at her place of employment. She was primarily treated by Dr. Thomas Butaud, who performed arthroscopic surgery on each of claimant’s knees. The orthopedist eventually released her from his care with a 15% disability to each knee. He concluded that she should be able physically to perform in a sedentary position with rest periods and lifting of no more than thirty pounds.
Through her August 26,1993 hearing date, U.S. Fire Insurance Company paid claimant benefits of $128.00 per week, or two-thirds of claimant’s pre-disability earnings.
The question at hearing was whether claimant remained entitled to benefits. In support of her case for continued relief, claimant offered her own testimony and that of a vocational expert. ^Plaintiff’s expert concluded that claimant would be forever disabled, mainly due to her limited mental abilities. This expert’s opinion was based on interviews with claimant less than one week prior to hearing and upon reviewing the results of standard aptitude tests that he had administered to claimant. The tests demonstrated that claimant possessed no more than third grade literacy and very modest intelligence. Additionally, plaintiff testified that each of the hypothetical employment prospects claimed by the defense to exist in reality did not. In fact, her uncontradicted testimony revealed that each of the prospective employers refused to even permit claimant, a simple, uneducated woman who only speaks English outside the home, the opportunity to apply for the positions upon her presentation.
Defendant’s insurer maintained that claimant was no longer entitled to benefits. It supported its position with the testimony of an in-house vocational rehabilitation consultant, who testified that claimant was capable of becoming employed in any of several positions identified in a 1991 job survey and matched against a three year old medical report. This testimony was'permitted over claimant’s objections, notwithstanding the consultant’s admission that she had not seen claimant in four years and had administered no tests to evaluate claimant’s mental competence for any but the most menial of jobs.[2]
By judgment and abbreviated reasons dated October 5, 1993, the hearing officer found that the employer had demonstrated that claimant was able to earn more than 90% of her preinjury wages and was no longer entitled to compensation benefits.
LAW
Credibility vs. Weight of Evidence
Practically speaking, an appellant’s right to redress is limited largely to cases in which the hearing officer misconstrues the law or clearly errs on the facts.
IsThe Supreme Court has summarized the manifest error rule applicable to workers compensation proceedings this way:
Despite the liberal construction of the statute afforded the worker in a compensation action, the worker’s burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Id.; Nelson [v. Roadway Express, *763 588 So.2d 350 (La.1991) ], supra. A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers’ Compensation, § 253 (2d Ed.1980). Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or Mends. Malone & Johnson, supra; Nelson, supra. Corroboration may also be provided by medical evidence. West, supra.
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” West, 371 So.2d at 1147; Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987). The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farms, Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases). Indeed, the manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court’s decision is based solely upon written reports, records or depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987).
Attempting to give meaning to the nebulous terms “clearly wrong” and “manifest error,” we recently enunciated the following general principles that govern an appellate court’s power to reverse a trial court’s factual findings:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989) (citations omitted and emphasis supplied).
As reflected by the underscored language above, in Rosell, supra, we identified two factors that limit the deference due the trier of fact. In West, supra, we identified a third factor especially apt in compensation actions: “the appellate court is not required by [the manifest error/clearly wrong] principle to affirm the trier of fact’s refusal to accept as credible uncontradicted testimony ... where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles.” West, 371 So.2d at 1150; See Thomas v. RPM Corp., 449 So.2d 18, 21 (La.App. 1st Cir.), writ denied, 450 So.2d 965 (La.1984).
Bruno v. Harbert Intern. Inc., 593 So.2d 357, 361 (La.1992) (Emphasis in original).
J/The manifest error rule applies to fact findings concerning a worker’s disability, Landry v. Central Industries, Inc. 592 So.2d 478, 480 (La.App. 3d Cir.1991), writ denied, 593 So.2d 381 (La.1992), whether the fact finder is a judge or a hearing officer. Key v. Insurance Company of North America, 605 *764 So.2d 675 (La.App. 2d Cir.1992). Even though an appellate court may feel its own evaluations of credibility and reasonable inferences are more reasonable than the fact-finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). In application, this means that the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987); Rosell, supra; Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993).
Conversely, the same deference does not attach to a trial court or hearing officer who measures a set of facts with an inappropriate legal gauge. (In light of the great deference. paid the factfinder, it is difficult to exaggerate the significance which attaches to the factfinder’s proper application of substantive law.) For this reason, courts on occasion have noted that the staple question found in workers compensation proceedings, whether a worker is disabled, constitutes a legal rather than a purely medical determination. See, e.g., DeGruy v. Pala, Inc., 525 So.2d 1124, 1133 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988).
Substantive Law
An exhaustive review of the judgment, reasons, and hearing transcript leads to the unmistakable impression that the hearing officer did not consider the odd-lot doctrine’s applicability to the case. The workers compensation law in force on the date of the accident governs work-related injuries and legal questions arising therefrom. Behmke v. K-Mart Corp., 581 So.2d 291, 295 (La.App. 5th Cir.1991).
Temporary Total Disability
LSA-R.S. 23:1221(1), as it existed at the time of the accident, defined “temporary total” disability as one preventing the injured party from:
[E]ngag[ing] in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience....
Guillory v. City of Lake Charles, 614 So.2d 165, 168 (La.App. 3d Cir.), writ denied, 616 So.2d 700 (La.1993) (see generally).
On. appeal, Ms. Handy contends the “odd-lot” doctrine applies to her situation.
The doctrine has been jurisprudentially determined as pertaining to temporary total disability although not specifically made part of the statute. See, Breaux v. Travelers Insurance Company, 526 So.2d 284 (La.App. 3d Cir.1988); Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La.1990). The “odd-lot” doctrine considers the injured party temporarily totally disabled where he or she is capable of only the most limited activities for which a stable employment market is nonexistent. If such a condition is shown, the burden shifts to defendant to prove employment is available. Frazier, supra.
Guillory, supra, at 168-69.
Although overruled for injuries from accidents occurring in 1990 and subsequently, and inapplicable under the 1983 Workers’ Compensation Act to claimants in eases in which the employee is seeking permanent rather than temporary total disability, Breaux v. Travelers Ins. Co., 526 So.2d 284 (La.App. 3d Cir.1988); Anderson v. Aetna Cas. & Sur. Co., 505 So.2d 199 (La.App. 3d Cir.1987), the odd-lot doctrine does apply to workers seeking temporary total disability for injuries arising from accidents occurring in 1988. Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3d Cir.), writ denied, 497 So.2d 312 (La.1986); see also Gobert v. PPG Industries, Inc., 534 So.2d 111 (La.App. 3d Cir.1988), writ denied, 538 So.2d 596 (La.1989); DeGruy v. Palo, Inc., 525 So.2d 1124 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988).
A claimant is considered temporarily totally disabled under the “odd-lot” doctrine when he can perform no services *765 other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. This determination can only be made after evaluating the claimant’s physical and mental capacity, education and training. The odd-lot claimant does not have to be absolutely helpless in order to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training, age and other factors combined to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd-lot category. This satisfies the claimant’s burden of proving that he should be awarded benefits for total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee’s residence. DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1st Cir.1988), writ denied, 530 So.2d 568 (La.1988).
Frazier v. Conagra, Inc., 552 So.2d 536, 542 (La.App.2d Cir.1989), writ denied, 559 So.2d 124 (La.1990).
Plaintiff maintains that the disadvantage she now experiences in the occupational marketplace, owing to her work-related injuries, limited intelligence and skills, qualify her for odd-lot temporary total disability. She notes that her post accident experience is corroborated by a vocational consultant retained by her attorney.
Plaintiffs expert testified that claimant was not suited for any of the positions suggested by defendant. This conclusion was abased on diagnostic tests administered to the claimant.
Q What were your findings on Mrs. Handy’s I.Q. evaluation?
A It was difficult giving her an I.Q. test. Her I.Q. test showed she had an I.Q. of approximately forty (40), which would be mildly mentally handicapped. I don’t think she’s that low functioning, but she is very slow.
The I.Q. test, which is the Slosson Intelligent Test, we are not allowed to repeat the questions, and she had problems understanding and communicating; so, therefore, we had to mark them wrong. I think that she has a very low level of functioning, but I don’t think her I.Q. is as low as forty (40).
Q What other evaluations did you perform?
A I gave the Wide Range Achievement Test, Revised, to check her level of functioning in Reading, Spelling and Math. This test indicated that she’s, basically, reading below the third grade level. She’s spelling at the third grade level, and she’s doing math at the third grade level. She, basically, would be considered an illiterate.
She will not have the ability to do any jobs that requires her to do any writing of the English language. She can scribble some notes, but she’s not going to do forms and records. She’s not going to answer a telephone and write down a message to pass on to somebody else. She can’t do that.
IsAfter reviewing the results of these tests, claimant’s vocational expert concluded that claimant was not qualified to perform any of the positions identified for the claimant.[3] His conclusions were buttressed by plaintiffs testimony that she was unable to apply for, let alone obtain, the positions claimed by defendant to be available.
When plaintiff attempted to apply for the telephone position suggested by defendant, she was told that she did not speak clear enough on the telephone and was not fast enough for the job. When she sought a cashier position, she was told she could not count change fast enough. When she attempted to get a job at a Eunice “sewing factory,” she was told they were not hiring. According to plaintiff, whose testimony has not been contradicted, she has been unable to land a job since 1988, when she was hurt after working for defendant for seven years.
There is simply no question that claimant established a prima facie case of odd-lot status. Her work accident occurred *766 October 10, 1988. She is unskilled. Her only previously held positions attested to by either party involved cleaning, an unskilled position ordinarily associated with lifting, stooping, and squatting. She now has a 15% disability in both knees and a greater whole body disability. Most important, she is third grade numerate and sub-third grade literate.[4]
Defendant did not seek to disprove claimant’s limited background with any testing whatsoever, did not contest claimant’s lack of skills, and certainly did not show that it had offered claimant any training or vocationally relevant rehabilitation in the five years ensuing between the date of her injury and the date of her hearing. See the mandatory rehabilitation provisions of LSArjR.S.g 23:1226.
The only testimony offered at hearing to support defendant’s case was that of a witness, Ms. Warren, whose conclusion was that employee was suited for employment. This conclusion could not have been founded upon any medical or vocational examinations taken of plaintiff in the three year period leading to the hearing. To the contrary, as has been stated previously, her knowledge of plaintiffs condition was limited to an initial interview conducted several years before, from conflicting medical reports, and from a three year old labor survey prepared by a coworker. In fact, as Ms. Warren conceded, she was only given the file soon before hearing:
Q Now, as I understand it, during the course of the life of this particular claimant’s particular file, you quit handling the claim for some time; is that correct?
A That’s correct.
Q Who took over?
A Debra Fitch, I think, was the person who — was the only person who has handled this claim since myself.
Q Do you recall when that was, approximately, that Debra Fitch took over?
A (Reviewing documents) I think ’92, and I don’t know if it’s relevant, Imbut it should be noted that this file has closed and reopened for our office. It has not been ongoing and continuously since 1988.
Q When did you first start reviewing this file again for this hearing today?
A A couple of weeks ago, I think, two weeks ago.
The record does not reveal why Ms. Fitch was not called to testify regarding this claim. However, it does disclose that Ms. Warren could not have drawn upon her own experience before offering her professional conclusion:
Q How many people have you placed in full-time re-employment, as a Vocational Rehabilitation worker for Crawford & Company, in the last five years?
How many people have you gone out and found them jobs, and got them back to work on a full-time basis?
A It would be very difficult for me to answer that truthfully, to give you an accurate, specific number. I can give you a range, but I can’t tell you one, two, ten, twenty.
Q Can you tell me any that for sure that you have done that in the past, place them in full-time re-employment?
A No.
Instead, her conclusion that claimant was able to perform | n satisfactorily in each of the positions stemmed from a generic occupational survey pieced together by others in her firm. The accuracy of their work hinged on an accurate medical assessment of claimant’s physical condition:
Q When you put together a labor market survey, what is the labor market survey based upon, physical restrictions only?
A No, the labor market survey is based upon physical restrictions as well as educational background, past work history, perhaps transferable skills, if there are any that a person would be able to carry from one job to another.
*767 Q Who makes the determination with regard to transferable skills, vocational background, and so forth?
A The Vocational Consultant.
Q It is your job; is that correct?
A That’s correct.
Q The job of the physician then, is to identify the physical restrictions; is that correct?
A That’s correct.
Based on this limited foundation, at hearing Ms. Warren offered her professional opinion that claimant was qualified to occupy three positions, telephone solicitor, cashier, and piecemeal seamstress.
As has been stated above, there is no question that claimant carried her burden of showing her prima facie odd-lot status. The question thus becomes whether employment within reasonable proximity was shown to be regularly and continuously available to the Church Point native. Frazier, supra; De-Gruy, supra. We think |I2not, and it was manifestly erroneous for the hearing officer to reach a contrary conclusion.
A factfinder’s evaluation of expert testimony is not to be upset unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990). We are confronted here with such a case. Put in its most favorable light, the conclusion reached by the hearing officer must be reversed as it rewards an employer who terminated benefits without a fall understanding of a worker’s condition.
It is incumbent upon the insurer to make a reasonable effort to ascertain the worker’s exact condition at the time which compensation benefits are terminated. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65, 69 (La.1983); Despain v. Guichard Drilling Company, et al., 93-933, 634 So.2d 1240 (La.App. 3d Cir.1994), citing Williams v. Liberty Mutual Insurance Co., 327 So.2d 462 (La.App. 3d Cir.1976). This applies with equal force to the question of whether an injured worker falls within the legally protected odd-lot category. Frazier, supra. Defendant did not undertake to assess claimant’s ability, did not seek to have conflicting medical evidence clarified, did not attempt to update its job surveys, and did not provide any rehabilitation services to claimant in the three year period leading to the hearing. Defendant was wrong to seek to discontinue benefits based on stale and conflicting reports, and the hearing officer was clearly wrong to do so when the assumptions were clearly shown at trial to be invalid.
Q Did you actually do the review and the contacts with the employer for the job at the grocery store?
A I am not familiar with what we are talking about, at the grocery store.
Q Well, what—
A Do you have a specific employer?
Q Let me ask you this: In the last two weeks that you have been involved with this file, and I am not asking about a stone polishing job, because I have | ^objected to introduction of that, what jobs, if any, or reports have you rendered, you rendered, not the former rehab lady, that indicate the availability of any jobs within a reasonable geographic area to Mrs. Handy’s residence that, you believe, she can perform? Have you rendered any such reports?
A No, I have not.
Q In your original testimony, as far as saying that you felt this lady could do telemarketing and sewing and work as a grocery store cashier, one of the considerations that you evaluated was the fact that she had a twelfth grade education; is that correct?
A That’s correct.
Q You assumed that she was functioning on a twelfth grade educational level; isn’t that correct? Having not tested her, you did not know what level she functioned on, did you?
A That’s correct.
Q In fact, no one with Crawford & Company ever performed a Wide Range Achievement Test on this lady, or any other type of actual educational testing, true?
A That’s true, we’re not allowed to.
I14AS has been stated, objective examinations administered the worker have demonstrated, embarrassingly, that she in fact lacks any *768 thing which even remotely resembles a twelfth grade equivalency.
Additionally, Ms. Warren indicated that claimant, who she had not seen in four years, could assume any one of the positions on the basis of two Butaud medical reports, one from 1989 and another from 1990, which she thought indicated claimant could function physically for eight hours without rest:
Q Was there any change with regard to the eight hours of continuous work that we discussed?
A Continuous sitting?
Q Sitting, yes.
A No, there were no changes. Both said that she could sit continuously for eight hours, without rest.
Q Without rest?
A Without rest.
Her conclusion that claimant was capable of assuming the sewing position was predicated on this belief:
Q With regard to the sewing job, in your expert opinion, is Mrs. Handy qualified for such a job?
A I think she is. In my opinion, she is.
Q Your opinion is based upon what facts?
A Based upon the information I obtained from Mrs. Handy during my interview with her, and the physical restrictions I received from Dr. Butaud.
Q So, the job fits within the physical restrictions placed upon her by Dr. Bu-taud?
lisA In my opinion, yes, they do. She is able to sit for eight hours, continuously.
Q Is that what this job requires? You describe this type of job for me, please?
A Yes. Basically, as Mr. Hebert indicated, this job is, basically, sedentary in nature. Meaning that she would be required to sit for extended periods of time, with minimum breaks.
She would not be required to break as she would like to, but because Dr. Butaud indicated that she was capable of sitting for an eight hour period, continuously, I felt that this position was within her physical restrictions.
Most important, however, no evidence was offered to refute claimant’s testimony that she did in fact attempt to apply for the jobs identified by defendant through a job survey, but that she was denied even the opportunity to apply, owing to her appearance, ability, countenance, or work history. After this showing was made, defendant failed to show that some form of gainful occupation was regularly and continuously available to the employee within reasonable proximity to the employee’s residence. Cf. Durbin v. State Farm Fire and Cas. Co., 558 So.2d 1257, 1258-1259 (La.App. 1st Cir.1990). We conclude from the foregoing that the injured worker is an odd-lot worker entitled to reinstatement of temporary total disability status. See, e.g., Guillory v. City of Lake Charles, 614 So.2d 165 (La.App. 3d Cir.1993), and Guillory v. Soloco, Inc., 570 So.2d 139, 142-143 (La.App. 3d Cir.1990).
Conclusion
Ms. Handy’s accident occurred during a period in which “odd-lot” relief is available, she made out her case for entitlement to relief on that basis, and defendant did not rebut plaintiffs case with any credible evidence. In light of the showing made, 11 (¡plaintiff remains entitled to temporary total disability benefits and is entitled to compensation for the period during which her benefits have been terminated.
“Unlike the rehabilitation provisions of the 1989 amendment to LSA-R.S. 23:1226 which focuses on job placement, the rehabilitation provisions of the prior law applicable to this case focused on training and education.” Freeman v. Poulan/Weed Eater, 93 C 1530, Louisiana Supreme Court, January 14, 1994, at p. 7; 630 So.2d 733, 740 (La.1994). Cf. Koslow v. E.R. Desormeaux, Inc., 428 So.2d 1275, 1277 (La.App. 3d Cir.1983). Consequently, the hearing officer is directed to order a full diagnostic evaluation of plaintiffs mental abilities so as to determine whether true rehabilitation is to be provided in accordance with LSA-R.S. 23:1226, Freeman v. Poulan/Weed Eater, supra, and Hopes v. Domtar Industries, 93-127, 627 So.2d 676 (La.App. 3d Cir.1993). Merely providing plaintiff with a list of potential employers will *769 not satisfy the requirement of vocational rehabilitation. Pierce v. City of Abbeville, 602 So.2d 170 (La.App. 3d Cir.1992).
All costs of these proceedings, including the costs of both experts, are to be taxed to the defendant.
REVERSED AND REMANDED.

. Claimant did not preserve her objection on appeal. Our inquiry is therefore limited strictly to whether the hearing officer was clearly wrong in finding claimant no longer entitled to benefits.

. Indeed, he offered his opinion that claimant would never again be able to work.

. Defendant places inordinate weight on plaintiff's testimony that she has graduated from high school. Although we are ashamed to admit it, a high school diploma in Louisiana does not per se render a forty-seven year old graduate literate, particularly when that evidence is overwhelmingly overcome by recent objective testing.